PEOPLES BANK OF JACKSONVILLE, A CORPORATION, *Appellant*, v. VIRGINIA BRIDGE AND IRON COMPANY, A CORPORATION, TIDEWATER GLASS MANUFACTURING COMPANY, A CORPORATION, E. T. MCILVAINE, AS RECEIVER OF THE TIDEWATER GLASS MANUFACTURING COMPANY, AND UNITED STATES TRUST COMPANY, A CORPORATION, *Appellees*.

En Banc.

Opinion Filed August 1, 1927.

476

*Stockton* and *Ulmer,* for Appellant;

*Chas. P.* and *James J. G. Cooper,* for Appellees.

### STATEMENT.

The Virginia Bridge and Iron Company, one of the appellees here, filed its bill in the Circuit Court for Duval County against the Tidewater Glass Manufacturing Company and the United States Trust Company to enforce a material man's lien for certain structural steel which had been sold by the complainant on written contract to the Glass Company for use by the latter for the construction of a certain furnace room and warehouse building on certain property in the City of Jacksonville. The United States Trust Company was also made a party defendant to the bill, it being alleged that the Trust Company claimed some interest in the premises, as purchaser, mortgagee or otherwise, the precise nature thereof being unknown to complainant, but that such interest, claim or lien, if any, was created or arose while the construction of the buildings of said Glass Company, in which complain-

ant's material was used, was in progress, and that, therefore, said Trust Company was a purchaser or creditor with notice of complainant's lien, and prayed a foreclosure of its lien as a prior lien over that of the Trust Company for the amount due it for such structural steel above mentioned, and also for a money decree for certain steel which had been contracted for but which the Glass Company had declined to take for the amount of the contract price less the fair market value of such unshipped material which had been fabricated by the complainant for the Glass Company in accordance with said written contract. Demurrers to the bill filed by the Glass Company and the Trust Company were overruled. Both defendants then filed their separate answers. The Trust Company alleged that its lien on the property had been created by a mortgage executed by the Glass Company to it and denied that its interest in the property described in the bill was created or arose while the construction of the building or buildings of said Glass Company were in progress, and alleged upon information and belief that prior to the acquisition by the Trust Company of its mortgage lien the construction on said buildings had ceased or had been suspended. This answer also denied that the Trust Company had any actual notice at the time of the acquisition of its lien that the complainant had supplied any material for said buildings, and hence that its lien was not inferior to the lien of the complainant. It also denied that complainant's alleged lien for material furnished had been recorded in accordance with the statute at the time of the execution and delivery of said mortgage. No copy of the mortgage was set forth in or attached as an exhibit to the answer. General replications were filed by the complainant to both answers and a special master was appointed. Most of the evidence taken before the special master consisted of the

stipulation as to the facts entered into between the parties. This stipulation showed that the complainant Bridge and Iron Company had entered into a contract with the Glass Company for the fabrication and shipment to it of certain structural steel, and that under this contract four carloads of such steel was shipped and delivered by the Bridge and Iron Company to the Glass Company between December 8th and the following January 9th. That the Glass Company had accepted and used said materials in the erection of a building or buildings upon the plant site described in the bill and thereupon became indebted to the Bridge and Iron Company in the sum of $7,999.33, for which amount the Bridge Company claimed a lien; that the Bridge and Iron Company was ready, willing and able to ship and deliver the balance of such material covered by the contract, but that the Glass Company had defaulted in its payments under the contract and had notified the Bridge Company that it was not ready to accept delivery of the remainder. That thereupon the Bridge and Iron Company suspended loading and shipping the material under said contract, with the exception of four angles weighing seventeen pounds which were shipped and delivered on April 9th, and that on the 14th of May it gave written notice to the Glass Company and terminated said contract in accordance with its terms. There was also evidence tending to show that the Bridge Company was entitled to a balance of $4,727.14 for the remainder of the material which it had prepared to ship under the contract less its scrap value.

The final decree adjudged that the complainant was entitled to a lien for $7,999.33 on the lands and property described in the bill, superior to the mortgage of the defendant Trust Company, and that the complainant was also entitled to a money decree for said sum of $4,727.14,

but that this latter claim did not constitute a material man's lien and was not superior to the Trust Company's mortgage. A foreclosure sale was decreed and execution was ordered to issue for the amount of the money decree.

About a month after the rendition of the final decree, and before the sale had taken place thereunder, the Peoples Bank of Jacksonville filed a petition for intervention. At this time the litigation had been proceeding for about a year. Among other things, this petition alleged that said Peoples Bank was the owner and holder of eight promissory notes, aggregating $20,000.00, together with interest thereon at 8%, which was secured by the mortgage given by the Glass Company to the United States Trust Company, which mortgage was dated on April 2nd and recorded on April 23rd, and that petitioner paid to said Glass Company the sum of $20,000.00 for said notes on April 25th, without any notice, actual or constructive, of the alleged lien of the Bridge Company on the property described in the mortgage or trust deed and in the belief that said mortgage was a first lien on the property and building described. That the contractor had not filed any notice of intention to hold any lien on said premises described in the final decree until May 8th, subsequently to the execution and recording of said mortgage on April 22nd and 23rd respectively, and that the complainant Bridge Company had done no work on said premises and furnished no material subsequent to January 9th, except that on April 11th it delivered four angles without any additional charge, same being negligible in nature and amount and should have been shipped by the contractor with the last delivery made on January 9th. It will be observed that this petition does not deny that the building was in course of construction at the time the mortgage to the Trust Company was executed. The petition further

averred that said Peoples Bank was an indispensable party to the cause, and that the bill failed to set forth any allegations which would make the joinder of the Mortgage Company in its individual capacity binding upon the rights and interests of petitioner. The petition does not deny knowledge on the part of petitioner of the pendency of the litigation, but it alleges that it had only lately heard of the decree, and since that time had been busy trying to procure the Glass Company to pay off the claim of the Bridge and Iron Company and had been assured that it would be done, thus leaving the mortgage securing the notes as a first lien, and that when it became apparent that the Glass Company would be unable to do this, petitioner decided to file the petition for intervention. The petition alleges that the materials furnished by the contractor had been substantially furnished by January 9th, and that in order for such Bridge and Iron Company to have acquired a lien superior to that of the mortgage, its notice of intention to hold such a lien should have been recorded within three months after the entire furnishing of the material, that is, on or before April 23rd, the date of the recording of said mortgage; that, therefore, petitioner became a creditor of the Glass Company without notice of the Bridge Company's claim at the time of its purchase of said notes on April 25th.

The petition for intervention prayed that petitioner be allowed to intervene and be given an opportunity to plead, answer or demur to the bill of complaint, and that pending the determination of petitioner's rights the final decree be set aside, and that on final hearing another decree be entered in its stead decreeing the rights of the petitioner superior to the Bridge and Iron Company, and that in the event the court would not grant such relief, that it should modify and amend its final decree so as to show whether

or not the property should be sold free and clear of the money decree above mentioned, and providing that in the event the premises upon such sale brought more than the amount of the lien decreed in favor of the complainant, together with costs, then the surplus be distributed to the holders of the notes secured by the mortgage to the United States Trust Company as trustee, pro rata, with interest thereon.

The complainant Bridge Company filed a motion to dismiss the petition upon various grounds, also an answer to the petition setting up a copy of the mortgage which had been executed to United States Trust Company, claiming that under said mortgage the Trust Company was made trustee, had the right to act, for said note holders, and that it was unnecessary to make the latter or any of them parties to the suit, and that the petitioner was bound by the final decree against the Trust Company.

The court rendered a decree denying and dismissing the petition for intervention, but modified its former decree in the alternative respects prayed for in said petition, so that the property should be sold free and clear of all of the liens claimed by the parties to the suit, and that the proceeds should be applied, first, to the complainant material man's lien and the costs of said suit, and any surplus remaining to be applied to the payment of said money decree in favor of the complainant Bridge Company.

The petitioner, the Peoples Bank of Jacksonville, thereupon appealed to this Court, assigning as error the order denying the dismissing its petition for intervention, and also the final decree in said cause.

BROWN, J. (After stating the facts as above.) :

There is serious doubt about the right of the appellant to intervene after final decree in the court below. As a

general rule, after litigation has resulted in final judgment or decree it is too late for third persons to be allowed to intervene as parties to the litigation. Smith v. Elliott, 56 Fla. 849, 47 So. 387; 20 R. C. L. 688; 21 C. J. 345. Such applications are unusual and have generally been denied, though there are cases where in the interests of justice leave to intervene has been granted after final decree. In this connection, the appellant bank calls attention to the fact that the Trust Company was made a defendant in its individual and not in its representative capacity, and contends that it (the bank) was a necessary party defendant to the suit, upon the ground that the beneficiaries as well as the trustee should have been made parties defendant. In support of this proposition appellant cites 27 Cyc. 354, 1567; Clark v. Manning, 95 Ill. 580; Caldwell v. Taggart, 29 U. S. 190, 7 L. Ed. 828; Schillinger v. Arnott, 14 N. Y. S. 326; Clark v. Reyburn, 19 (U. S.) L. Ed. 354; Brown v. Brown, 86 Tenn. 316, 7 S. W. 643; Doke v. Williams, 45 Fla. 248, 251, 34 So. 569; Morgareidge v. Howey, 75 Fla. 235, 78 So. 14; Kerreson v. Stewart, 23 (U. S.) L. Ed. 846; William v. Morgan, 111 U. S. 684, 20 L. Ed. 559; 15 Encyc. of Pldg. & Prac. 636, 637; Everett v. Edwards (Mass.), 5 L. R. A. 112. On the other hand, it is contended by the appellee Bridge Company that under the terms of the mortgage and the notes secured thereby, the Trust Company was made agent or representative of the note holders with such powers that it could represent the rights of these note holders as defendant in the suit, and that, therefore, the final decree was binding upon the note holders; that the trustee defended and actively contended for the priority of the mortgage lien, and that in view of the fact that it was made a party defendant and answered in its name, "United States Mortgage and Trust Company," the mortgage or trust deed

having been executed to it in that name, the mere fact that it was not designated in the pleading as trustee became a matter of no substance or consequence. In support of its contentions in this regard, appellee cites Fink v. Bay Shore Terminal Co., 144 Fed. 837, 75 CCA 665 (affirmed 203 U. S. 577, 51 L. Ed. 235) ; Kerreson v. Stewart, 93 U. S. 155, 163, 23 L. Ed. 843; Young v. Whitney, 18 Fla. 54; Schuster v. Crawford, 199 S. W. 327; 23 Am. & Eng. Encyc. of Law, 823; 22 Standard Encyc. of Proc. 154-5; see also in this connection 2 R. C. L. 667, 685; Jones on Corporate Bonds and Mortgages (2nd ed.), paragraph 33, pp. 33-34; 41 C. J. 882.

The decision of this question, which is not free from difficulty, would probably turn upon a consideration of the terms of the mortgage or trust deed, but we prefer to ground the decision of this case upon the substantive question raised by the petition, and which has been ably argued by counsel for both sides, rather than to base the same upon a mere procedural point. Even if the court below had been in error in dismissing the petition from a procedural stand point, its action can clearly be sustained upon the insufficiency of the substantive ground set up by the petition for intervention.

The petition for intervention does not deny that the mortgage or trust deed was executed and recorded while the construction of the building, for which the complainant Bridge Company had furnished the steel, was in progress, but it contends that this was not sufficient to give the mortgagee notice of complainant's lien for such material. This contention is based upon the theory that it is not the mere fact that a building is in process of construction which makes a creditor one with notice, under the provisions of the statute. Paragraph 1 of Sec. 3517, Rev. Gen. Stats., pertaining to the acquisition of liens by persons in privity

with the owner and purchasers or creditors with notice, reads as follows: "As against the Owner.—As against the owner, absolute or limited, of the property, real or personal, upon which a lien is claimed, or person deriving through his death, or purchasers or creditors with notice, the lien hereinbefore provided for shall be acquired by any person, in privity with such owner, by the performance of the labor or the furnishing of the materials. Any purchaser or creditor whose title, interest, lien or claim in or to the property shall be created, or shall arise, while the construction or repair of such property as aforesaid is in progess shall be deemed and held to be a puchaser or creditor with notice."

Appellant contends that under the first sentence of the above paragraph a lien is acquired by a person in privity with the owner "by the performance of the labor or the furnishing of the material," and that, therefore, under the second sentence, that the use of the words "as aforesaid" has reference to the furnishing of the particular material or the performing of the particular work; Hence, it is contended that inasmuch as the Bridge Company delivered the last carload of material on January 9th, and completed the furnishing of material at that time, the mere fact that the building was still in course of construction at the time the mortgage was made by the owner and recorded on April 23rd, would not charge the mortgagee, and the holders of the notes secured by the mortgage, with notice of such material man's lien, notice of which was not recorded until May 8th. That each lien is distinct; that it begins when the material is first furnished and is complete when the last material is furnished, and that unless the furnisher of the material files its notice of such lien for record within three months after the last materials were furnished, if in the meantime, before the recording of the lien notice, the owner

executes a mortgage on the property, the mortgagee becoms a creditor without notice, although at the time the construction of the building was in progress. In other words, appellant contends that it is the actual furnishing of the labor or material, which constitutes notice to a purchaser or creditor whose rights attach while such furnishing of material is in progress, and that this is the meaning of the terms of the statute above quoted.

Although the point has been argued with great ingenuity and ability, wo do not think it tenable. It confuses what is necessary to acquire a lien with what is necessary to give constructive notice of such lien. The statute shows that the lien is *acquired,* as against the owner or purchasers or creditors with notice, by a person in privity with the owner, *by the performance of the labor or the furnishing of the material.* And the statute shows just as plainly, that *notice* of such lien is constructively given to any and all purchasers or creditors whose title, interest, or lien, in and to the property is created or arises while the construction of such property is in progress, *by the actual going on or progress of such construction.* The words "as aforesaid," above referred to, follow and qualify the word "property," and has reference to the property, "real, or personal upon which a lien is claimed," as used in the first sentence of the quoted statute, and also to the word "property" as used in certain preceding sections of this chapter of the Revised General Statutes, to-wit, Secs. 3496-7, which, together with sec. 3517, R. G. S., formed a part of the same original statute, which was Chapter 5143 of the Acts of 1903. It was the evident intention of the statute that if a man should buy, or take a lien upon, property on which the construction of a building was in progress, such construction should be sufficient to put him upon inquiry and hence charge him with notice of any liens that might have been acquired thereon by the furnishing of labor or materials

for the erection of such building, and we think this notice is efficacious as to such purchaser or lienor even though more than three months has elapsed since the furnishing of the material or the performance of the labor and no notice of the lien of the material man or laborer had been recorded within such three months period. As long as the construction of the building is in progress, this under the statute is sufficient to put creditors and purchasers whose rights arise while such construction is in progress upon notice of the liens which had already attached to the property in favor of material men and laborers. But a different situation exists after the building has been completed. Thus, in Axtell v. Smedley, 59 Fla. 430, 52 So. 710, which was a case where E. P. Axtell had purchased the property in question after the completion of the buildings thereon, without actual or constructive notice of the lien for material furnished for the erection of such building, it was held that one furnishing material has three months after the entire furnishing thereof to record his lien so as to secure such lien for twelve months after the record of same against persons who purchase the property or creditors without notice who became such after the recording of the lien, but that such recording had no retroactive effect and would not constitute notice as against a purchaser without actual notice who bought the property after the materials had been furnished and the construction of the building had been completed, and before the lien was recorded, although the three months allowed for recording had not expired. But if Axtell had purchased during the progress of construction of the building on the property, and after the materials had been furnished, or the material man had commenced to furnish them, he would have been a purchaser with notice, although there had been no record-

ing of any notice of such lien on the public records. See Guaranty Title & Trust Co. v. Thompson, 113 Sou. Re. 117.

That it is the progress of the construction or repair of the property upon which the lien is claimed which gives constructive notice to those who become creditors or purchasers during the progress of such construction, as to any liens which have been acquired by the performance of labor or the furnishing of material, is a principle which has underlain, by implication at least, the previous decisions of this Court. The practical difficulties and absurdities which would result from any other construction confirm the thought that the Legislature must have intended the statute to import the meaning we have above attributed to it, and which is the obvious meaning which the language used would convey to the average mind.

It is true that as to the acquisition of such liens, it was held by this Court in the case of Peoples Bank of Jacksonville v. Arbuckle, 82 Fla. 479, 90 So. 458, that the State does not make material men's and laborers' liens relate back to the commencement of the construction or repairs on the property affected by such liens, but that such liens are acquired by the performance of the labor or the furnishing of the material, and hence that a mortgage lien has priority over statutory liens that are acquired by those who begin to perform labor or to furnish materials after the recording of the mortgage. However, it was said in the opinion of Mr. Justice WHITFIELD in the cited case, that:

"It is enacted that 'Liens prior in dignity to all others accruing thereafter shall exist in favor' of material men and laborers, who are in privity with the owner, as against the owner and purchasers and creditors with notice; and that 'the lien hereinbefore provided for shall be acquired * * * by the performance of the labor or the furnishing of the materials'; and that any purchaser or creditor

whose interest in 'the property shall be created, or shall arise, while the construction or repair of such property is in progress shall be decreed and held to be a purchaser or creditor with notice.' The statute defines the only way in which its liens may be acquired and provides that liens so acquired shall be 'prior in dignity to all others accruing thereafter.' Purchasers and creditors with notice that construction or repairs are in progress, take subject to liens that have been acquired by performing labor or furnishing material, and must ascertain at their risk what liens have so accrued under the statute. The provision that a purchaser or creditor whose interest in the property accrues 'while the construction or repair * * * is in progress shall be deemed and held to be a purchaser or creditor with notice,' is intended to make the progress of such construction or repair legal notice thereof even if the purchaser or creditor in fact has no notice or knowledge of such construction or repair being in progress on the premises.''

See also Palm Beach Bank & Trust Company v. Lainhart, 84 Fla. 662, 94 So. 122.

The efficacy of the recording of notice in the clerk's office within three months after the complete performance of the labor or furnishing of the material, in paragraph 2 of said Sec. 3517, Revised General Statutes, is to give notice of the lien claimed to purchasers and creditors of the owner ''without notice.'' That is, without actual notice or that constructive notice which is chargeable to those acquiring liens while the construction was going on. If the purchaser or creditor has already had notice by becoming such purchaser or creditor while the construction or repair of the property was in progress, further notice to him by recording notice of lien on the public records would be unnecessary, though it might be a protection as against

subsequent lienors, purchasers, etc., who have acquired or might acquire, rights subsequent to the cessation of the construction or repair upon the property on which the lien is claimed. This mortgage lien arose while the building was in course of construction. It made no difference whether complainant's steel was actually being used at the moment, or whether the steel frame had all been erected at the time the mortgage lien arose. The building being in an uncompleted state, and in progress of construction at the time the mortgage was given and recorded, this served as notice to the world that liens may have been acquired by the performance of labor or the furnishing of material upon such building and the property upon which it stood, and hence the Trust Company took the mortgage in question in this case with notice of the Bridge Company's lien.

We agree with appellant that the Bridge Company might well be considered as having completed the furnishing of its material more than three months before the mortgage was taken and recorded, and that under the statute the time had expired within which notice of lien is required to be filed under paragraph 1 of said Section 3517. The statute provides that no such record notice shall be effectual unless recorded within three months "after the entire performance of the labor or the entire furnishing of the material." The last carload of 64,700 lbs. of steel was delivered on January 9th. The delivery of the four angles, weighing only seventeen pounds, on April 11th, which should have been included in the prior carload shipment, and was left out by the negligence and mistake of the Bridge Company, according to the allegations of the petitioner, would, if such allegations be true, be so negligible in nature, that under the circumstances the Bridge Company might be deemed to have completed the "entire

furnishing of the material" on January 9th. The furnishing of an article trivial in character is not sufficient to extend the time for filing notice of lien for record where such article is furnished after the furnishing of material by the lienor has been substantially completed. 18 R. C. L. 933; 40 C. J. 269.

In consideration of this case, we have had the benefit of able and well-prepared arguments, both oral and written, of counsel for both sides, which have been of great assistance to the Court.

For the reasons above pointed out, we conclude that none of the assignments or error are well taken, and that the decree appealed from should be affirmed.

Affirmed.

ELLIS, C. J., AND WHITFIELD, TERRELL, STRUM AND BUFORD, J. J., concur.