634 So.2d 610 (1994)
Judith Sharon ABRAMSON, Petitioner,
v.
The FLORIDA PSYCHOLOGICAL ASSOCIATION, et al., Respondents.
Carol SEIDMAN, Petitioner,
v.
The FLORIDA PSYCHOLOGICAL ASSOCIATION, et al., Respondents.
Nos. 81230, 81248.
Supreme Court of Florida.
March 24, 1994.
Rehearing Denied April 6, 1994.
Arnold R. Ginsberg of Perse, P.A. & Ginsberg, P.A., Thomas J. Morgan, P.A., Miami, on behalf of Judith Sharon Abramson, Joseph R. Boyd and William H. Branch of Boyd & Branch, P.A., Tallahassee, on behalf of Carol Seidman, for petitioners.
Darren A. Schwartz and Bruce Culpepper of Haben, Culpepper, Dunbar & French, P.A., Tallahassee, for respondents.
Robert P. Smith of Hopping, Boyd, Green & Sams, Tallahassee, amicus curiae for The Florida Chamber of Commerce, Inc.
Robert A. Butterworth, Atty. Gen. and Louis F. Hubener, Asst. Atty. Gen., Tallahassee, on behalf of Atty. Gen., as amicus curiae.
GRIMES, Justice.
We review Abramson v. Florida Psychological Association, 610 So.2d 447 (Fla. 1st DCA 1992), in which the court certified the following question as one of great public importance:
WHEN IS IT LAWFUL FOR THE ATTORNEY GENERAL OF THE STATE OF FLORIDA, AS THE LEGISLATIVELY APPOINTED COUNSEL FOR A STATE BOARD OR AGENCY, TO SETTLE A LAWSUIT BETWEEN SAID BOARD OR AGENCY AND A PRIVATE *611 INDIVIDUAL UNDER TERMS OR CONDITIONS THAT ARE NOT EXPRESSLY AUTHORIZED BY THE BOARD'S LEGISLATIVE GRANT OF POWER?
Abramson, 610 So.2d at 450. We have jurisdiction under article V, section 3(b)(4) of the Florida Constitution.
In 1979 the laws regulating the practice of psychology in Florida were permitted to sunset. Two years later, the legislature enacted new laws regulating the practice of psychology, which were codified as chapter 490, Florida Statutes (1981). In order to become a licensed psychologist by examination, applicants are required to hold a doctoral degree in psychology from an institution accredited by the American Psychological Association or a comparable institution. The petitioners Abramson and Seidman obtained doctoral degrees in psychology from Heed University, which was licensed in Florida but unaccredited.
In 1981 Abramson and Seidman, joined by others, filed suit in federal court against the Florida Department of Professional Regulation (Department) and the Florida Board of Psychological Examiners (Board) as well as others, contending that chapter 490 was unconstitutional both facially and as applied to them. They also claimed that grandfathering provisions in the new law permitting particular persons to receive the benefit of licensure were invalid and that certain persons who had practiced in Florida during the sunset period had been deprived of their rights without due process. The case continued for a number of years. In 1990 the Department and the Board made a settlement offer[1] under which, in exchange for their withdrawal from the lawsuit, Abramson and Seidman (and others) could be licensed alternatively (1) without examination if they could show that their qualifications were equivalent to those necessary for certification in 1981, or (2) by passing the licensure examination for psychologists in no more than two sittings. Abramson and Seidman accepted the settlement offer and withdrew from the suit. They later passed the licensure examination. The federal action proceeded with the remaining plaintiffs resulting in a holding that the statute unconstitutionally prohibited nonlicensed persons who were practicing psychology from holding themselves out as psychologists.[2] The other constitutional challenges were rejected.[3]
In the meantime, the Florida Psychological Association, an association composed of licensed psychologists, and an individual member of the Association filed suit in the circuit court of Leon County, seeking to enjoin the licensure of Abramson and Seidman for failure to meet the educational requirements of chapter 490. After concluding that the plaintiffs had the requisite standing,[4] the trial court made the following finding:
b. Understandably, the Public Defendants feared the grandfather clause would be held unconstitutional and that the Private Defendants would be licensed without examination. As a compromise between "no grandfathering" at all and "grandfathering without examination", the BOARD offered the settlement. Existing minimal educational requirements were ignored because they were not the central issue; instead, the awaited ruling on the constitutionality of the grandfather clause was the focus. Not only did Private Defendants dismiss themselves from the federal law suit which was later decided against them, but they studied and sat for examination for licensure. The Private Defendants have timely met their end of the settlement agreement, all at the insistence of the Public Defendants. The Private Defendants relied on the validity of the settlement. However, these facts are insufficient to support enforcement of the settlement. *612 To allow this would ignore the plain statutory requirements for licensure, including the contested grandfather clause.
The court held that the agencies were obligated to follow the law as written and had no authority to waive the educational requirements in an effort to settle the lawsuit and preserve the statute's constitutionality. The court enjoined the licensure of Abramson and Seidman until they met the educational requirements of the statute.
The district court of appeal affirmed the trial court's order. The court rejected the contention that the settlement agreement should be upheld because its purpose was to end the litigation which threatened the validity of the entire regulatory framework of chapter 490. The court held that the subject agencies were required to construe the statutes they administered on the presumption that such statutes were valid and that they had no authority to enter into the settlement agreement. The contention that equity should be applied to allow enforcement of the agreement was denied on the premise that a party may not seek to enforce an illegal contract. On motion for rehearing, the court chose to certify the question.
Upon reflection, we decline to answer the certified question because we do not believe that a general rule can be formulated which would be applicable under all circumstances. Rather, we have determined to limit our holding to the facts of this case. For reasons hereafter discussed, we conclude that the decision below should be reversed.
Administrative agencies have the authority to interpret the laws which they administer, but such interpretation cannot be contrary to clear legislative intent. Florida Dairy Farmers Fed'n v. Borden Co., 155 So.2d 699 (Fla. 1st DCA 1963). At the same time, the power of a public body to settle litigation is incident to and implied from its power to sue and be sued. Williams v. Public Util. Protective League, 130 Fla. 603, 178 So. 286 (1938). Moreover, a ruling adverse to Abramson and Seidman in this case could make it extremely difficult for agencies to accomplish settlements which are clearly in the best interest of the people of the state.
There is no doubt that the Department and the Board entered into the settlement in good faith in an effort to protect the constitutionality of chapter 490 which was being seriously challenged. There is no suggestion of any collusion. Moreover, the settlement did not jeopardize the health or welfare of the citizens of Florida. Abramson and Seidman held doctoral degrees from a college licensed in Florida though not accredited. They were required to take the requisite examination and passed it. Any such deviation from legislative intent which may have resulted from the settlement was minimal. To refuse to uphold the settlement under these circumstances would have the effect of discouraging third parties from ever trying to settle their controversies with the governmental agencies of Florida. We cannot see how the public interest was jeopardized by this settlement, and under principles of fundamental fairness, we believe that it should be upheld.
We quash the decision below and remand with directions that the settlement agreement be honored.[5]
It is so ordered.
BARKETT, C.J., and OVERTON, McDONALD, KOGAN and HARDING, JJ., concur.
SHAW, J., dissents with an opinion.
SHAW, Justice, dissenting.
While I agree that in this case the public interest was probably not jeopardized by the settlement, I feel that the majority opinion sets a dangerous precedent. The majority opinion holds that a state agency may settle a lawsuit with a private entity by entering into an agreement that directly contravenes clear statutory language.
This is not a case of statutory construction involving an ambiguous statutory phrase, or a case wherein an agency has been granted wide authority to implement a loosely drafted law. Quite the contrary. Here, all parties agree that the language is crystal clear. Simply put, in order to become a licensed psychologist in Florida by examination, applicants *613 must hold a doctoral degree in psychology from an institution accredited by the American Psychological Association or comparable organization.[6] Abramson and Seidman did not do this. Case closed.
Added to my discomfort is the fact that the majority opinion fosters a misperception. We granted review in this case to answer a certified question asking, in effect: When is it lawful for the Florida Attorney General to settle a lawsuit between a state agency and a private individual. This issue, however, was not argued at the trial or district court levels, was not ruled on by either lower court, and is not answered in the present majority opinion.[7] In fact, the present record shows that the Attorney General did not settle this lawsuit. Assistant Attorney General John J. Rimes, of the Department of Legal Affairs, acting in his capacity as legal counsel to the many occupational and professional boards of the Department of Professional Regulation, merely conveyed a settlement offer from his clients to Abramson and Seidman. The Attorney General most emphatically did not endorse, sponsor, or in any way place his imprimatur upon the policy considerations underlying the agreement.[8]
I feel that we erroneously accepted jurisdiction in this case and compounded the mistake by deciding the issue wrongly. I would revoke our review as improvidently granted and let stand the decision of the district court.
NOTES
[1] The offer was extended in writing by an assistant attorney general who was representing the Department and the Board pursuant to statute.
[2] At that time, chapter 490 did not purport to prohibit unlicensed persons from practicing psychology but only from holding themselves out as psychologists.
[3] Abramson v. Gonzalez, 949 F.2d 1567 (11th Cir.1992).
[4] Abramson and Seidman have not questioned the standing of respondents before this Court.
[5] This decision is applicable only to those who entered into the settlement agreement.
[6] Section 490.005, Florida Statutes (1989), provides in part:

490.005 Licensure by examination 
(1) Any person desiring to be licensed as a psychologist shall apply to the department to take the licensure examination. The department shall license each applicant who the board certifies has:
... .
(b) Submitted proof satisfactory to the board that he has:
1. Received a doctoral degree with a major in psychology from a program which at the time the applicant was enrolled and graduated was accredited by the American Psychological Association;
2. Received a doctoral degree with a major in psychology from a program which at the time the applicant was enrolled and graduated maintained a standard of training comparable to the standards of training of those programs accredited by the American Psychological Association... .
[7] The question was proposed to the district court by Abramson and Seidman on motion for rehearing. I note that Judge Ervin dissented as to certification.
[8] The Attorney General says in his brief to this Court: "The First District Court of Appeal has certified a question that its own decision did not rule on or even address. Moreover, its factual premise  that the Attorney General settled the lawsuit  is erroneous... ."