647 So.2d 129 (1994)
Curtis R. KRUER, Appellant,
v.
BOARD OF TRUSTEES of the INTERNAL IMPROVEMENT TRUST FUND OF the STATE OF FLORIDA and Charles River Laboratories, Inc., Appellees.
No. 92-3618.
District Court of Appeal of Florida, First District.
April 18, 1994.
*130 Wayne Kruer, Key West, for appellant.
Brian F. McGrail, Asst. Gen. Counsel, Dept. of Natural Resources, Tallahassee, for appellee Bd. of Trustees of the Internal Imp. Trust Fund of State of Florida.
Robert A. Routa, Tallahassee, for appellee Charles River Laboratories, Inc.
SMITH, Judge.
Appellant appeals a final order of the Board of Trustees of the Internal Improvement Trust Fund (Board) denying his petition for administrative hearing. We affirm.
Appellant alleged, in his petition for a hearing pursuant to section 120.57(1), Florida Statutes, that he is a recreational fisherman and a licensed fishing guide and boat captain, who earns a portion of his living from guiding. He further alleges that he is a field biologist with a master's degree in marine biology as well, and that he owns property and lives within a 30 minute or less boat ride of both Key Lois and Raccoon Key, in the Florida Keys, where, since 1972 and 1976 respectively, Charles River Laboratories (Lab) has been conducting a monkey-breeding operation.
According to appellant's petition, for the last 15 years, the Lab has been engaged in monkey-breeding activities on the sovereign submerged lands abutting these islands, which submerged lands are owned by the Board in trust for the people of Florida. He alleges that the monkeys have foraged on the red mangrove fringe of the islands, resulting in the destruction of the mangroves, and that their feces have contaminated the surrounding water, resulting in damage to marine animal and plant habitats with accompanying loss of fish availability in these waters. He alleges that if the monkey-breeding activities are allowed to continue on sovereign lands the damages complained of will soon be irreparable  if not already so.
Appellant's petition alleges further that in connection with a lawsuit between the Board and the Lab, the Board is either preparing to, or has already, executed an agreement in settlement of the lawsuit, under the terms of which the Board will execute or has already executed leases in favor of the Lab which will permit the Lab to continue to engage in its monkey-breeding activities on the sovereign lands of Key Lois and Raccoon Key. Appellant also alleges that in agreeing to the settlement, the Board has by-passed significant provisions of Chapter 253, Florida Statutes, and rules enacted thereunder designed for *131 the protection of the environment. The petition alleges that on July 21, 1992, the Board voted to approve the settlement and the leases.
In its order denying the petition for administrative hearing, the Board confirmed the allegation that it had approved the settlement of the lawsuit in question, and that the leases were to be executed by the Board in accordance with the terms of the settlement agreement. The Board determined, however, that appellant was not entitled to an administrative hearing in that he lacked standing to challenge the Board's actions complained of. In addition to the Board's denial of appellant's standing to interfere with the Board's settlement of the circuit court litigation, the Board determined that appellant had failed to satisfy both prongs of the test of standing under Agrico Chemical Co. v. Department of Environmental Regulation, 406 So.2d 478, 482 (Fla. 2d DCA 1981), rev. denied, 415 So.2d 1359 (Fla. 1982) and 415 So.2d 1361 (Fla. 1982).
In its order, the Board found that appellant's allegations concerning injury to his substantial interests failed to show that he would suffer injury in fact which was real and immediate, and that his allegations amounted at best to mere speculation or conjecture. Further, the Board determined that even if appellant's allegations concerning injury should be deemed sufficient to meet the first prong of the Agrico test, appellant had not shown that the regulatory scheme found in Chapter 253, Florida Statutes  under which the Board is authorized to administer and manage state-owned sovereignty submerged lands and to grant leases  is designed to protect against the type of injuries appellant claims to have suffered, or will suffer as a consequence of the execution of the leases by the Board. In this connection, the Board's order points out that the Board's authority to grant submerged land leases is governed by section 253.03(7), Florida Statutes, as a part of the regulatory scheme for the administration and management of state-owned lands, including sovereignty submerged lands. However, the order notes, no authority is conferred upon the Board to regulate activities on privately-owned property, and the regulatory scheme contained in Chapter 253 does not encompass the control or prevention of such activities as those conducted by the Lab on privately-owned upland property. Moreover, according to the Board's order, jurisdiction to regulate water quality and the alteration and restoration of mangroves in wetlands is expressly conferred upon the Department of Environmental Regulation (DER), not the Board. §§ 403.93-403.938, Florida Statutes (1991).
Upon consideration of the record, and the briefs and argument of counsel, we are of the view that the Board's denial of an administrative hearing based upon appellant's lack of standing should be affirmed. Section 120.57 applies in all proceedings in which the substantial interests of a party are determined by an agency. As the late Professor Dore explained, the phrase "are determined by an agency" suggests that the important or significant concerns of a party must be decided, settled, or resolved conclusively or finally by the agency. Dore, Access to Florida Administrative Proceedings, 13 Fla.St.U.L.Rev. 965, 1064 (1986). We conclude, for the reasons that follow, that the Board did not err in denying standing to appellant below.
At the outset, we observe that the element of "immediacy" of injury is of little consequence to this proceeding, based on the contents of the petition for administrative hearing filed below. By appellant's own account, the conditions of which he complains have been occurring over a period of 15 years. It cannot be said, therefore, that any action by the Board concerning the granting of leases to the Lab has caused any injury to appellant. Likewise, except for the general allegation that appellant fears that continued degradation of the water quality and destruction of the mangroves will continue if the leases are granted, there is no allegation concerning any lease provision which would in any way license or approve the occurrence or continuation of these or any other activities deleterious to the environment in the future. It must be recalled, also, that the proposed leases are of alleged submerged sovereignty lands, not privately-owned uplands as to which the Board has no jurisdiction. As for appellant's specific concerns *132 relating to water quality and the mangroves, appellant neither alleges in his petition, nor does he argue in his brief before this court, that the jurisdiction of DER to regulate or prohibit these detriments to the environment is in any way diminished by the Board's actions.[1]
We find that appellant's petition is fundamentally lacking on another ground: Appellant has failed to demonstrate that the relief he seeks is available in the administrative proceeding requested. Appellant's petition for administrative hearing asserts that it has for its laudable purpose the prevention of the impairment, pollution or other injury to the natural resources of the state. However, it is not in any way demonstrated that denial of the leases to the Lab will accomplish this purpose; rather, the allegations of the petition itself conclusively show this not to be the case, since the conditions complained of have been occurring over a period of 15 years, and continue to occur, according to the petition, in the absence of any lease from the Board. It is apparent, moreover, that appellant seeks relief in the nature of an injunction, for which an action may be maintained under section 403.412, Florida Statutes. Florida Wildlife Federation v. State Department of Environmental Regulation, 390 So.2d 64 (Fla. 1980). Appellant cites no authority, and we are aware of none, which would grant to the Board the authority to award injunctive relief to abate or prevent the occurrence of the conditions of which appellant complains.
As a practical matter, it is noted that there was no ongoing lease proceeding under Chapter 253, Florida Statutes, pending before the Board in which the Board was exercising its discretion.[2] Instead, as it clearly appears both from appellant's petition and the Board's order, as well as from the briefs and oral argument before this court, the Board's approval of the proposed leases constituted actions taken in the conduct of litigation before the Circuit Court of Monroe County, whose jurisdiction to resolve the litigation between the Board and the Lab has not been questioned.
We find pertinent to our ruling here the Florida Supreme Court's recent decision in Abramson v. Florida Psychological Association, 634 So.2d 610 (Fla. 1994) (Abramson II), quashing the decision of this court in Abramson v. Florida Psychological Association, 610 So.2d 447 (Fla. 1st DCA 1992) (Abramson I). In Abramson I, we affirmed a mandatory injunction invalidating actions of the Florida Department of Professional Regulation and the Florida Board of Psychological Examiners taken pursuant to a settlement agreement disposing of court litigation involving the department and board and individuals seeking licensure to practice psychology in the state. In so ruling, we applied the principle that an agency may not act beyond the limits of its delegated legislative authority, and that this limitation should pertain even where an agency has entered into a settlement agreement in court litigation. Reversing, the supreme court declined to answer this court's certified question by formulating a general rule that would be applicable under all circumstances, but concluded, under the facts presented, that this court's decision should be reversed.
*133 Although the supreme court declined to establish a general rule regarding the power of administrative agencies to enter into settlement agreements in court litigation, we nevertheless find instructive the court's expression of general principles implicated in considering the validity and binding effect of such settlements, particularly as stated in the following paragraphs:
Administrative agencies have the authority to interpret the laws which they administer, but such interpretation cannot be contrary to clear legislative intent. Florida Dairy Farmers Fed'n v. Borden Co., 155 So.2d 699 (Fla. 1st DCA 1963). At the same time, the power of a public body to settle litigation is incident to and implied from its power to sue and be sued. Williams v. Public Util. Protective League, 130 Fla. 603, 178 So. 286 (1938). Moreover, a ruling adverse to Abramson and Seidman in this case could make it extremely difficult for agencies to accomplish settlements which are clearly in the best interest of the people of the state. There is no doubt that the Department and the Board entered into the settlement in good faith in an effort to protect the constitutionality of chapter 490 which was being seriously challenged. There is no suggestion of any collusion. Moreover, the settlement did not jeopardize the health or welfare of the citizens of Florida. Abramson and Seidman held doctoral degrees from a college licensed in Florida though not accredited. They were required to take the requisite examination and passed it. Any such deviation from legislative intent which may have resulted from the settlement was minimal. To refuse to uphold the settlement under these circumstances would have the effect of discouraging third parties from ever trying to settle their controversies with the governmental agencies of Florida. We cannot see how the public interest was jeopardized by this settlement, and under principles of fundamental fairness, we believe that it should be upheld.
The court thus recognized the power of agencies to enter into settlements of court litigation; and we extract from the above-quoted language the following factors to be considered by the judiciary in determining whether such settlements should be upheld: (1) whether the agency acted in good faith; (2) whether there is any evidence of collusion; (3) whether it appears that the settlement will jeopardize the health or welfare of the citizens of Florida; and, (4) whether under the circumstances the settlement is in the best interest of the people of the state. We do not deem this list to be all-inclusive, nor do we assume that the expression of the relevant factors should be confined to the exact language used by the court. As noted by the court itself, its holding was limited to the facts of the case before it. We, in turn, would similarly limit our holding to the facts before us in the present case.
Turning to the matter before us, we find no allegation in the petition filed below purporting to address the merits of the Board's settlement of pending litigation with the Lab.[3] The petition asserts, in part: "To allow potential lessees to file suit and then obtain by settlement an otherwise ungrantable lease on terms which condone unlawful activity contravenes the state constitution and laws and rules thereunder for the protection of natural resources." This conclusory allegation is premised upon reasoning similar to that underlying this court's Abramson I decision, which, as noted, has been disapproved and quashed by the supreme court in Abramson II. In addition, although the Abramson II opinion is silent in regard to the appropriate forum in which to challenge an agency's settlement in court litigation, we are of the view that the proper forum would *134 be the court in which the challenged settlement agreement and judgment is entered, or about to be entered; or, as in Abramson, by a separate action for injunctive relief. It is also our view that one seeking to bar an agency's action in settlement of court litigation should bear the burden, initially, of coming forward with allegations of specific facts which, if proved to be true, would justify a court in finding an abuse of power resulting in grievous detriment to the public interest clearly outweighing the benefits to be gained by such settlement. Nothing approaching such allegations appears in the petition filed below.
Appellant has furnished no authority in support of his attempt to challenge the outcome of court litigation by means of a collateral attack in the administrative forum.[4] This court in Suntide Condominium Association, Inc. v. Division of Florida Land Sales, 504 So.2d 1343 (Fla. 1st DCA 1987), held that when a case is properly pending in a circuit court, a party cannot compel an agency through a declaratory statement petition to give opinions or decisions concerning the issues, or as to the outcome of controversies, then pending in the court. See also, Couch v. State, 377 So.2d 32 (Fla. 1st DCA 1979). While admittedly, these holdings were issued in circumstances unlike those in the case before us, we nevertheless find that the rationale of these decisions evidences the court's disfavoring of the efforts of a party to obstruct an opposing party's pursuit of a judicial remedy by attempting to obtain administrative preemption over issues then pending in a court proceeding involving the same parties. Here, of course, appellant was not a party to the pending court proceeding in which the Board and the Lab reached a settlement agreement providing for the granting of the disputed leases. However, appellant does not deny adequate notice of the pendency of such litigation, and he offers no explanation for his failure to intervene in the pending circuit court litigation, or to otherwise act through court proceedings to prevent the actions he now seeks to forestall.
Accordingly, we agree that the Board in dismissing appellant's petition for lack of standing has acted in a manner consistent with its duties and obligations as a participant in on-going circuit court litigation. Further, whether or not appellant at this juncture has lost the opportunity to affect the outcome of the pending circuit court proceeding, he is not without a remedy. Should any of the several agencies now involved in the regulation of the Lab's monkey-breeding operations fail to carry out their regulatory responsibilities, appellant may seek injunctive relief under section 403.412(2)(a)1, Florida Statutes.
AFFIRMED.
BOOTH, J., concurs.
WEBSTER, J., concurs in result only.
NOTES
[1] The Board's order states, in part:

DER, pursuant to the authority of Chapter 403, Fla. Stat., and Chapter 17, F.A.C., has exercised jurisdiction over the surface waters, mangrove alteration, and restoration of the wetlands on Key Lois and Raccoon Key since May 1988. On May 2, 1988, DER entered into a Consent Order with CRL [Charles River Laboratories] setting forth terms and conditions to address the water quality and mangrove issues on Key Lois and Raccoon Key. CRL has been in substantial compliance with the terms and conditions of the Consent Order since its inception. See section 18-21.004(2)(c), F.A.C.; "DER biological assessment and reports by other agencies with related statutory, management, or regulatory authority may be considered in evaluating specific requests to use sovereignty lands."
These allegations, though unsubstantiated as fact, since there was no hearing below, are nevertheless indicative of the ramifications of the pending controversy that are not apparent from the face of appellant's petition for an administrative hearing.
[2] Because it is unnecessary to our decision in this case, we express no view as to whether appellant's petition alleged facts sufficient to afford him standing to object to the Board's granting of a lease in a proceeding governed by section 253.12, Florida Statutes.
[3] To the contrary, we find considerable attempt by the Board, both in its order on appeal, and in its briefs and arguments before this court, to point out the significant advantages and benefits to the state which were accomplished by the settlement of its litigation involving the Lab. In an unpublished order we have previously declined the Board's request to incorporate in the record on appeal, and to judicially notice, the settlement agreement and consent judgment entered in the circuit court litigation. For this reason we have refrained in this opinion from discussion of the particulars of that litigation and settlement, except to note its existence and the fact that the proposed leases to the Lab are a part of the settlement agreement, since these facts are alleged by appellant in his petition filed below.
[4] We note, however, the Fourth District's opinion in Singer Island Civic Association, Inc. v. Florida Department of Environmental Regulation, 636 So.2d 723 (Fla. 4th DCA 1994), in which the court, adhering to the court's earlier ruling in a companion case, Eastpointe Condominium Ass'n I, Inc. v. Palm Beach Isles Associates, 636 So.2d 721 (Fla. 4th DCA 1993), nevertheless expressed the view that, but for its earlier ruling, the court would favor administrative proceedings under chapter 120 for review of an agency's stipulated settlement agreement in circuit court litigation.