967 So.2d 1121 (2007)
STRANAHAN HOUSE, INC., a Florida Not-For-Profit Corporation and Friends of the Park at Stranahan House, Inc., a Florida Not-For-Profit Corporation, Petitioners,
v.
CITY OF FORT LAUDERDALE, a Florida Municipal Corporation and Coolidge South Markets Equities, L.P., a Delaware Limited Partnership, Respondents.
No. 4D06-4146.
District Court of Appeal of Florida, Fourth District.
November 14, 2007.
*1122 W. Tucker Gibbs of W. Tucker Gibbs, P.A., Coconut Grove, William Scherer and James Carroll of Conrad, Scherer, Fort Lauderdale, Kendall Coffey and Mark Journey of Coffey & Wright, L.L.P., Miami, for petitioners.
Robert H. Schwartz and Alain E. Boileau of Adorno & Yoss LLP, Fort Lauderdale, for respondent City of Fort Lauderdale.
Robert S. Hackleman and Helaina Bardunias of Gunster Yoakley & Stewart, P.A., Fort Lauderdale, for respondent Coolidge-South Markets Equities, L.P.
WARNER, J.
This petition for certiorari seeks review of the circuit court's denial of petitioner's challenge to the decision of the City of Fort Lauderdale approving a site plan for a property next to the Stranahan House, a historical home in Fort Lauderdale. Petitioner claims that the court applied the *1123 incorrect law in denying its challenge to the two different decisions of the City. In the first, it challenged the City's approval of a litigation settlement agreement which was incorporated into a final judgment. We conclude that petitioner, who failed to appeal the final judgment, cannot attack it by petitioning to review the settlement agreement. In the second, petitioner challenged the approval of an alternative site plan for the property. We conclude that the trial court did not depart from the essential requirements of law in denying relief on this petition.
This litigation involves the development of a downtown Fort Lauderdale property known as the Hyde Park Market site, which is adjacent to the Stranahan House and on the north bank of the New River. The Stranahan House is zoned as an H-1 Historic Preservation District. Despite the history of the Stranahan House, the adjacent Hyde Park Market site was not categorized as a Historical Preservation District under the Unified Land Development Regulations ("ULDRs"). The Hyde Park Market site is zoned as a Downtown Regional Activity Center  City Center (RAC-CC), which permits an intense level of land use. Significantly, no rezoning has ever been requested for the Hyde Park Market site in these proceedings. Thus, no change of use has ever been contemplated.
Coolidge-South Markets Equities, L.P. ("Coolidge"), the developer, purchased the Hyde Park Market site in 1998. In late 1999, Coolidge submitted the original site plan to the City for the proposed development of a 38-story condominium building on the Hyde Park Market parcel. The City referred the original site plan to the Development Review Committee ("DRC").
While the site plan was under consideration, the City filed an eminent domain action, seeking to condemn the Hyde Park Market site for purposes of building a park. Coolidge filed an answer and counterclaim against the City for damages. Stranahan House joined with the City in seeking to condemn the property and actually paid some of the City's litigation costs.
Eventually, the circuit court granted summary judgment against the City on its eminent domain petition, concluding that there was no reasonable public necessity for condemning the site for use as a park. Coolidge's counterclaim for damages due to delay remained pending.
Having disposed of the condemnation action, Coolidge filed amended counterclaims, which included a counterclaim seeking a judicial declaration that Coolidge's original site plan was in compliance with all applicable City code requirements. The City unsuccessfully moved to dismiss Coolidge's amended counterclaims. The circuit court ruled that the declaratory action was ripe. Thus, compliance of the site plan with City regulations became an issue in the case, as well as Coolidge's claim for substantial damages.
After years of litigation, the parties agreed to a settlement just days before trial was to commence. The City Commission initially considered the settlement proposal in a non-public meeting and the next day publicly debated the issue at a noticed City Commission hearing. Following public comment from a number of residents, mostly opposing the settlement, a majority of the commission approved the settlement agreement.
The next day the circuit court approved a Consent Final Judgment, which embodied the terms of the settlement agreement. The Consent Final Judgment determined that the site plan submitted in March 2000 complied with all applicable ULDRs as they existed on September 8, 1999, and that the original site plan was consistent with the Comprehensive Plan of the City. It also found, in accordance with the settlement, *1124 that the development was compatible with the surrounding area, including the Stranahan House. If changes in the applicable building codes occurred after the submission of the original site plan, Coolidge agreed to revise the plans to comply with such regulations where economically feasible. The City agreed to cooperate in expediting all of the approvals necessary for the development.
However, the judgment also provided that Coolidge could complete and submit an alternative site plan reflecting a redesign of the building, and the 1999 ULDR standards were the "applicable regulations" which would govern the alternative site plan, including the procedure for approval of the alternative plan. The City agreed to "diligently expedite and cooperate" with Coolidge in obtaining all necessary approvals and permits to allow development of the alternative site plan. In return, Coolidge agreed to convey a portion of the property to the City for the purposes of developing a public plaza. The parties agreed that if, for any reason, Coolidge did not obtain all necessary approvals for the alternative site plan, the remainder of the Consent Final Judgment would be enforced with respect to the original site plan. Stranahan House did not attempt to intervene in the suit to challenge the judgment.
Instead of attacking the judgment, Stranahan timely filed its first petition for writ of certiorari in the circuit court, seeking to quash the City's decision to approve the settlement agreement. That petition argued that the City departed from the essential requirements of law when it approved the original site plan through the settlement agreement and consent final judgment without a final vote of the City DRC as required by the City's land development regulations.
While the petition was pending, Coolidge filed an application for the alternative site plan. The alternative site plan provided for a 42-story, mixed-use building, which would be larger than the structure called for in the original site plan. However, the alternative site plan would change the angle of the building to accommodate the proposed plaza. The alternative site plan was referred to the DRC for review.
The DRC held only one public meeting on the alternative site plan. The staff presented comments, but the DRC did not vote on the proposal. Subsequently, the DRC issued its "review and comment" report.
Coolidge then submitted a development application for the alternative site plan to the City's Planning and Zoning Board ("P & Z Board"). The P & Z Board reviewed the application, and was instructed that it could review and comment on the proposal. Coolidge's attorney outlined the plan to board members. The meeting then proceeded with numerous comments from interested parties and members of the community. At the conclusion of the hearing, the P & Z Board debated issues and made comments, but did not take a vote.
Following the P & Z Board meeting, the City conducted a quasi-judicial hearing to consider the plan. Many people spoke, including various representatives of Stranahan House. All speakers were limited to three minutes of time. The commissioners debated the issues and ultimately voted to approve the alternative site plan. The mayor signed a resolution approving the plan and authorized the issuance of building and use permits.
Stranahan timely filed another petition for writ of certiorari in the circuit court challenging the decision to approve the site plan. In the petition, Stranahan sought to quash the resolution of approval, claiming, inter alia, that: 1) the City did not afford interested parties due process, 2) the City did not comply with the requirements for *1125 review and approval by the Historical Preservation Board, 3) the City improperly failed to apply the 2005 ULDRs instead of the 1999 ULDRs, and 4) the alternative site plan failed to meet the requirements of the 2005 ULDRs, particularly its neighborhood compatibility requirement.
The circuit court consolidated Stranahan's two petitions for certiorari. In a lengthy opinion, the court denied both petitions. The court related the history of the litigation and the efforts of the parties to arrive at a settlement. The court noted that pursuant to the settlement agreement the City agreed to expedite the site plan review in accordance with all the City review processes.
While Stranahan House argued that the settlement agreement constituted invalid contract zoning because it contracted away the City's review process, see Chung v. Sarasota County, 686 So.2d 1358, 1359 (Fla. 2d DCA 1996), the court concluded that the City had the authority to settle litigation when such settlement was made in good faith without evidence of collusion or jeopardy to the health or welfare of the citizens, and in the best interests of the citizens, citing Kruer v. Board of Trustees of the Internal Improvement Trust Fund, 647 So.2d 129 (Fla. 1st DCA 1994). The court found that the settlement agreement met those criteria. Further, it found that the settlement agreement expressly provided for compliance with applicable zoning laws and did not constitute improper contract zoning. The court also concluded that the City afforded all parties due process and the City's decision was supported by competent substantial evidence. After the circuit court denied rehearing, Stranahan timely petitioned this court for second-tier certiorari review.
At the same time that Stranahan House filed its petition for review of the alternative site plan, it filed a declaratory judgment action pursuant to section 163.3215(3), seeking a declaration that the plan was inconsistent with the City's comprehensive plan and an injunction to prevent further action on the site plan. The circuit court dismissed the suit on many of the same grounds as it denied the petition. Stranahan House appealed that order, and we have recently reversed the dismissal of the declaratory judgment action. See Stranahan House, Inc. v. City of Fort Lauderdale, 967 So.2d 427 (Fla. 4th DCA 2007).
I. Standard of Review
The scope of certiorari review is very limited, as second-tier certiorari review is not to be merely a second appeal. Pharmcore, Inc. v. City of Hallandale Beach, 946 So.2d 550, 552 (Fla. 4th DCA 2006). In second-tier certiorari review, a district court of appeal determines only whether the circuit court afforded procedural due process and applied the correct law. City of Deerfield Beach v. Vaillant, 419 So.2d 624, 626 (Fla.1982). Applying the correct law incorrectly does not warrant certiorari review. See Ivey v. Allstate Ins. Co., 774 So.2d 679 (Fla.2000). "[T]he departure from the essential requirements of the law necessary for the issuance of a writ of certiorari is something more than a simple legal error." Id. at 682. District courts of appeal should exercise the discretion to grant certiorari "only when there has been a violation of a clearly established principle of law resulting in a miscarriage of justice." Combs v. State, 436 So.2d 93, 96 (Fla.1983).
II. Limitation of Issues
Although raised in the circuit court, issues of plan inconsistency are not appropriately brought in a petition for certiorari. In its second petition to the circuit court, Stranahan House included allegations of the alternative site plan's inconsistency *1126 with the historical preservation provisions and neighborhood compatibility provisions of the comprehensive plan. Such claims must be filed as a declaratory judgment action pursuant to section 163.3215(3) and are not properly part of the petition for review. See Educ. Dev. Ctr., Inc. v. Palm Beach County, 721 So.2d 1240 (Fla. 4th DCA 1998); Cook v. City of Lynn Haven, 729 So.2d 545 (Fla. 1st DCA 1999). Those issues were raised in the declaratory judgment complaint and addressed in the appeal of that order of dismissal. Thus, our resolution of this case excludes those allegations of plan inconsistency.
III. Petition For Certiorari to Review Approval of Settlement
Although the circuit court considered together the petitions for review of the commission action approving the settlement agreement and for review of the approval of the alternative site plan, we separate the analysis of those two cases, because the petitions raised separate issues.
The first petition claimed that Stranahan had been denied procedural due process in the public notice of the commission meeting approving the plan, that the commission acted without a review of the original site plan by the DRC, and that there was no competent substantial evidence before the commission to support its result. The circuit court concluded that because the commission had the authority to settle litigation, it could approve this settlement, which it did through a public hearing. It found that the settlement agreement did not eliminate the requirements of approvals for the plan. Therefore, it denied the petition.
The City and Coolidge argue that Stranahan House cannot challenge the consent final judgment through a petition for certiorari because it did not intervene in the circuit court proceedings. We agree. The petition for certiorari to the circuit court did not challenge a development order. It challenged the City's settlement of a lawsuit. That settlement resulted in a final judgment. No one appealed the final judgment. Stranahan House did not seek to intervene when Coolidge amended its counterclaim to request a declaratory judgment that the original site plan complied with the City ordinances, nor did it attempt to intervene post-judgment. Although post-judgment intervention is generally not allowed, "there are cases where in the interest of justice leave to intervene has been granted after final decree." Wags Transp. Sys., Inc. v. City of Miami Beach, 88 So.2d 751, 752 (Fla.1956) (quoting People's Bank of Jacksonville v. Va. Bridge & Iron Co., 94 Fla. 474, 113 So. 680, 682 (1927)). In Wags, our supreme court applied the exception to allow homeowners to intervene for purposes of appeal after the circuit court entered a decree enjoining the city from enforcing zoning restrictions on property adjacent to the homeowners. Stranahan House stands in the same position as the homeowners in Wags.
A similar case is Zoning Board of Monroe County v. Hood, 484 So.2d 1331 (Fla. 3d DCA 1986). A developer sought a zoning change, and when it was denied, it sought de novo review in the circuit court. After trial, the parties stipulated to the final judgment approving the change upon certain concessions from the developer. The final judgment required the zoning board to approve the zoning changes. Although the zoning board did so, a third party appealed the approval to the county commission which denied the zoning change. The developer sought to enforce the final judgment, and the trial court granted its motion, prompting an appeal of the order by the county commission. The district court held that the county could *1127 not reject the very final judgment to which it agreed, because the judgment was final. The court explained:
A final judgment is one which determines the rights of the parties and disposes of the cause on its merits leaving nothing else to be done but the execution of the judgment.
. . . .
After expiration of the time for taking an appeal, the only vehicle for setting aside the final judgment would be by a proper motion made pursuant to Florida Rule of Civil Procedure 1.540. . . .
Id. at 1332-33. In a footnote, the court noted that third party landowners could have filed a motion for relief, based on fraud, pursuant to rule 1.540 (presumably after they had intervened in the case), or they could have filed an independent collateral attack on the judgment. Id. at 1333 n. 4.
Here, Stranahan did not attack the judgment either directly or through a collateral proceeding. It filed a petition challenging the underlying settlement decision. This is insufficient to vacate a final judgment. The trial court did not depart from the essential requirements of law in denying the petition.
IV. The Petition to Review the Alternative Site Plan
The second petition challenged the resolution granting approval of the alternative site plan. The issues raised in this petition include (1) lack of due process; (2) lack of compliance with historical and neighborhood review procedures; and (3) failure to apply the correct ULDR procedures for review.[1]
In disposing of the second petition, the circuit court determined that the consent final judgment did not eliminate the necessity of compliance with the relevant public hearings for the alternative site plan, and petitioner had received an opportunity to be heard at duly noticed meetings of the relevant review boards and commissions. Stranahan raises a due process issue in its petition to this court but its complaint involves the alleged lack of due process before the DRC and City Commission in refusing to hear extensive testimony from its witnesses. This argument is beyond the scope of the due process review available in second-tier certiorari proceedings. See Seminole Entm't, Inc. v. City of Casselberry, 813 So.2d 186, 188 (Fla. 5th DCA 2002) ("Arguments as to the alleged lack of due process before the city commission were properly presented to the circuit court but are beyond the scope of the due process review available here."). The circuit court applied the correct law in evaluating Stranahan's due process claim, and this court may not now second-guess the circuit court's conclusion at this stage.
Stranahan House also contends that the City failed to apply the 2005 ULDRs and used the 1999 ULDRs instead. The issue, however, is whether the circuit court applied the correct law. The court found that the consent final judgment provided for the application of the 1999 regulations. As in Hood, the City was required to follow the terms of the judgment that it had agreed to. Therefore, the court applied the correct law in determining which set of regulations should apply. Further, Stranahan House has not shown that even applying the 2005 regulations, the City did not abide by them.
Stranahan's main complaint appears to be that the City did not obtain a *1128 certificate of appropriateness from the Historical Review Board. Yet it has failed to show that failing to obtain one was a departure from the essential requirements of law. It is not clear from our review of the relevant regulations that a certificate of appropriateness from the Historical Review Board was necessary for development of the Hyde Park Market site. Section 47-16.6 of the Fort Lauderdale ULDR provides that "[n]o person shall undertake any . . . [new construction] . . . affecting property in an H-1 district without first obtaining a certificate of appropriateness from the historic preservation board in accordance with Sec. 47-24.11.C. . . ." Reading section 47-16.6 in conjunction with section 47-24.11.C, a certificate of appropriateness does not appear to be required in this case. Section 47-24.11.C.1.b states that "[w]henever any . . . new construction . . . is undertaken on a property in a designated historic district without a certificate of appropriateness, the building official shall issue a stop work order." (emphasis added). Because the Hyde Park Market site is not in a designated historic district, it is not clear that a certificate of appropriateness was required for construction. We cannot say that the circuit court departed from the essential requirements of law.
Stranahan House also points to the regulation requiring a transition from very dense to other uses in the City code. However, it has not shown that the circuit court ignored this provision. The court found that competent substantial evidence supported the City's decision to approve the site plan. This would include the compliance with this regulation. Second-tier review does not include a determination of whether competent substantial evidence supported the circuit court's decision.
Having carefully reviewed the arguments, and being mindful of our limited review, Stranahan has not shown that the court failed to apply the correct law. Thus, we deny the petition.
SHAHOOD, C.J., and STEVENSON, J., concur.
NOTES
[1] We have already noted that the issue of plan consistency with respect to historical preservation and neighborhood compatibility was properly brought to the court through the declaratory judgment action.