946 So.2d 1165 (2006)
Kramer A. LITVAK, John B. and Nancy L. McKamey, Carolyn Davis, Joseph Reynes and Michael Thiel, Appellants,
v.
SCYLLA PROPERTIES, LLC, William D. Clark, Jr. on their behalves and on behalf of others similarly situated and Citizens Property Insurance Corporation, Appellees.
Nos. 1D05-2163, 1D05-3727.
District Court of Appeal of Florida, First District.
December 21, 2006.
*1167 Charles F. Beall, Jr. of Moore, Hill & Westmoreland, P.A., Pensacola, and Terrie L. Didier of Beggs & Lane, RLLP, Pensacola, for Appellants.
John Beranek of Ausley & McMullen, Tallahassee, and Stuart R. Michelson of the Law Office of Stuart R. Michelson, Fort Lauderdale, for Appellees Scylla Properties, LLC and William D. Clark, Jr., and G. Alan Howard and Robert M. Dees of Milam, Howard, Nicandri, Dees & Gillam, P.A., Jacksonville, for Appellee Citizens Property Insurance Corporation.
BENTON, J.
In proceedings below, Kramer A. Litvak, John B. and Nancy L. McKamey, Carolyn Davis, Joseph Reynes and Michael Thiel (the Litvak group) sought unsuccessfully to be heard in opposition to a motion to certify a class. We have jurisdiction, not only to review the order denying the Litvak group's motion to intervene as named plaintiffs, but also, since the Litvak group are members of the class although not named partiesto review the class certification order itself. In certifying the class, the trial court ruled class members like appellants had no ability to opt out. We do not address the merits of the certification order, but we reverse the order denying intervention, vacate the class certification order, and remand for further proceedings.

I.
Scylla Properties, LLC, and William D. Clark, Jr. (Scylla and Clark), brought suit against Citizens Property Insurance Corporation (Citizens) seeking to recover under insurance policies for losses incurred during the 2004 hurricane season. Asserting that a common legal question[1] made a *1168 class action appropriate, Scylla and Clark filed an amended complaint seeking certification, under Rules 1.220(b)(1) and 1.220(b)(3), Florida Rules of Civil Procedure, of a class that "consist[ed] of all persons who [we]re insured with Citizens and whose homes [we]re located in Florida and were rendered a `total loss' by Hurricanes in 2004, with the exception of those properties located within the jurisdiction of the Fourth District Court of Appeal."
Meanwhile, in separate actions, Mr. Litvak, like some (but not all) of the other members of the Litvak group, had also filed suit against Citizens, seeking recovery individually on first-party claims for losses incurred during the 2004 hurricane season. (Members of the Litvak group who had not already done so, the motion to intervene alleges, had plans to file suit against Citizens.) At a hearing in the Escambia County case Mr. Litvak brought against Citizens, the motion further alleges, Citizens' counsel told him that an order certifying a mandatory classthe order on review in our case No. 1D05-2163had been entered in the present (Scylla and Clark) case on April 5, 2005.
Less than thirty days later, on May 2, 2005, the Litvak group filed a motion to intervene in the Scylla and Clark case pursuant to Florida Rule of Civil Procedure 1.230. The motion requested "leave to intervene in this matter for all purposes, including the right to appeal the Court's . . . Findings and Order Certifying Class." The Litvak group alleged that they were members of the certified class, albeit not named, and asserted: "Litvak does not believe that the issues raised in this matter are best resolved by a class action and will opt out of the class if given the opportunity to do so."[2] The motion stated the Litvak group's intent to appeal the order certifying the class, unless it was revised to allow them to opt out.
Although their motion to intervene was still pending, the Litvak group filed a notice of appeal of the order certifying the class on May 5, 2005, thus initiating our case No. 1D05-2163.[3] Then on May 9, 2005, the Litvak group filed a motion asking us to relinquish jurisdiction, so that the trial court could rule on its motion to intervene. While the motion to relinquish jurisdiction was pending, the trial court held a hearing on reconsideration of class *1169 certification, the Litvak group's motion to intervene, and the motions for summary judgment filed by Citizens and Scylla and Clark.[4] Only thereafter did we relinquish jurisdiction.
Once we had relinquished jurisdiction in No. 1D05-2163, the trial court acted on the motion to intervene then pending below, denying it on June 8, 2005. We had resumed jurisdiction in No. 1D05-2163 by the time the Litvak group filed a motion for rehearing in the trial court as to, then a timely notice of appeal of, the order denying the motion to intervene, giving rise to our case No. 1D05-3727. The appeals from the order certifying the class, No. 1D05-2163, and the order denying the motion to intervene, No. 1D05-3727, were consolidated.[5] We now reverse the order denying the motion to intervene in No. 1D05-3727 and vacate the order certifying the class in No. 1D05-2163.

II.
The amended complaint alleged a class so numerous that joining all members was impractical[6]; that the named plaintiffs' *1170 claims turned on a common legal question; and that they were typical of the claims of the whole class, in that all members had insurance policies written by Citizens and subject to the Valued Policy Law (VPL), and had suffered total losses caused in part by windstorm. The amended complaint alleged that the class representatives would fairly and adequately protect the interests of the members of the class; that all class members' financial interests were aligned in the litigation; and that class counsel included the lawyer who brought the claim which resulted in the decision in favor of the insureds in Mierzwa v. Florida Windstorm Underwriting Association, 877 So.2d 774 (Fla. 4th DCA 2004). Citizens answered and filed a counterclaim for declaratory relief, seeking a declaration that the VPL was not applicable; and alternatively that, if the VPL was applicable, Citizens was entitled to set off flood insurance payments to plaintiffs.
Citizens and Scylla and Clark filed an agreed motion for class certification, essentially tracking the allegations in the amended complaint, but stating that "[a]lthough Plaintiffs originally brought this action as a class action under Fla. R. Civ. P. 1.220(b)(1) and 1.220(b)(3), Plaintiffs and Citizens agree that this action should be heard as a class action under Fla. R. Civ. P. 1.220(b)(1) and 1.220(b)(2)." Simultaneously the parties jointly filed their stipulation of contested matters as to certification of class.
The parties identified only two issues as contested: whether the class should include owners of insured property lying within the territorial limits of the Fourth District Court of Appeal; and whether the class should be subdivided into three subclasses, based on the extent of damage done by wind. Scylla and Clark sought to exclude cases governed by the Fourth District's decision in Mierzwa, asserting that the insured parties in those cases were already assured that the VPL would apply in their cases. Citizens argued for three subclasses of insured owners whose property the hurricane had rendered a total loss: those whose windstorm damage did not exceed the deductible; those whose windstorm damage did exceed the deductible but caused less than half of the loss; and those whose windstorm damage caused more than half of the total loss. Opposing subclasses altogether, Scylla and Clark argued that plaintiffs whose windstorm damage did not exceed the deductible should simply be excluded from the class.
At the hearing on the motion for class certification, the trial judge raised the possibility of giving putative class members notice and an opportunity to opt out, but ultimately ruled that, although the plaintiffs originally brought the action under Florida Rules of Civil Procedure 1.220(b)(1) and (b)(3), requiring that notice be given to all class members,[7] the parties *1171 had since agreed, and should be allowed, to proceed with the case as a class action under Rules 1.220(b)(1) and (b)(2). The trial court dispensed with notice and ruled that the class consisted of all persons who were insured by Citizens as to structures deemed a total loss after the 2004 hurricane season, excluding those with properties located within the jurisdiction of the Fourth District Court of Appeal. Finding that all of the class members entered into the same form contract with Citizens, the trial court divided the class into three subclasses based on the part wind damage played in rendering the property a total loss.
The class certification order listed the Rule 1.220(a) requirements for certifying a class: numerosity of claims, commonality of claims, typicality of claims, and fair and adequate representation by the class representatives. Explaining that it had separately considered each of the requirements, the trial court made findings that the case met each requirement.[8] The class was certified as follows:

*1172 All persons whose Citizens-insured structures were damaged in the 2004 hurricanes by a combination of wind and flood in an amount giving rise to an actual or constructive total loss of the insured structures, other than those whose Citizens-insured structures were located in the counties of Broward, Indian River, Martin, Okeechobee, Palm Beach or St. Lucie.
In keeping with Citizens' request, the class was also divided into three subclasses:
a. insureds whose losses attributable to wind damage were less than their deductible;
b. insureds whose losses [were] attributable to wind damage were in excess of their deductible, but less than 50% of the value of the property; and
c. insureds whose losses attributable to wind damage were in excess of 50%, but less than 100% of the value of the property.
(No provision was made for the theoretical case in which wind damage caused exactly half the total loss.) Subsequent to class certification, Citizens filed its answer and affirmative defenses, and the case went forward.

III.
"An order denying a motion to intervene is final as to and appealable by the movant. See, e.g., City of Sunrise v. Town of Davie, 472 So.2d 458, 459 (Fla. 1985)." Y.H. v. F.L.H., 784 So.2d 565, 567-68 (Fla. 1st DCA 2001). The trial court's denial of a motion to intervene is reviewed for abuse of discretion. See Wingrove Estates Homeowners Ass'n v. Paul Curtis Realty, Inc., 744 So.2d 1242, 1243 (Fla. 5th DCA 1999). Florida Rule of Civil Procedure 1.230, which governs intervention, provides:
Anyone claiming an interest in pending litigation may at any time be permitted to assert a right by intervention, but the intervention shall be in subordination to, and in recognition of, the propriety of the main proceeding, unless otherwise ordered by the court in its discretion.

(Emphasis supplied.) A person seeking leave to intervene must claim an interest "`of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment.'" Union Cent. Life Ins. Co. v. Carlisle, 593 So.2d 505, 507 (Fla. 1992) (quoting Morgareidge v. Howey, 75 Fla. 234, 78 So. 14, 15 (1918)). See also Kissoon v. Araujo, 849 So.2d 426, 429 (Fla. 1st DCA 2003). The Litvak group claim just such an interest here.[9] The Litvak group have asserted interests in insurance proceeds that are the subject of and already at issue in the present litigation.
*1173 As nonnamed members of the class, they are indeed already parties to this class action lawsuit. But class members may intervene as named parties, in order to pursue objectives the original named class representatives fail to pursue, or to protect interests adverse to or incompatible with interests that the original named class representatives are pursuing, or if their representation is otherwise inadequate. As the revisers of the federal intervention rule explained:
A class member who claims that his "representative" does not adequately represent him, and is able to establish that proposition with sufficient probability, should not be put to the risk of having a judgment entered in the action which by its terms extends to him, and be obliged to test the validity of the judgment as applied to his interest by a later collateral attack. Rather he should, as a general rule, be entitled to intervene in the action.
Fed.R.Civ.P. 24(a) (2006) (Advisory Committee Notes, 1966 Amendment). Precisely because they are already parties, mandatory class members' intervention rights narrow the trial court's discretion in deciding motions by which mandatory class members seek to intervene as named parties. See Kearney v. Saline, 208 So.2d 650, 652 (Fla. 1st DCA 1968) ("As a general rule, the matter of allowing parties to intervene is discretionary after the entrance of a final decree, however, we are not here confronted with a `run of the mill' case in which the final decree settled the issues between the parties. First, we have a class suit. . . . ").
Citizens argues the general proposition that there is no absolute right to intervention. See Fla. Wildlife Fed'n, Inc. v. Bd. of Trs. of the Internal Improvement, 707 So.2d 841, 842 (Fla. 5th DCA 1998) (affirming denial of a motion to intervene where, although would-be intervenors showed a direct and immediate interest in the case, the main party in the case was able fully to protect their interests). But Citizens overlooks the fact that nonnamed class members are already parties to the litigation whose rights are being determined. Florida Wildlife Federation did not involve a class action, and the would-be intervenors there were not nonnamed class members, but strangers to the litigation. See id.
Citizens seems to contend that intervention simply in order to appeal should not be permitted. But see Ramos v. Philip Morris Cos., 714 So.2d 1146, 1147-48 (Fla. 3d DCA 1998) (holding nonnamed class members can move to intervene as named parties for the purpose of appeal). See also State ex rel. Shevin v. Metz Constr. Co., 285 So.2d 598, 599 (Fla. 1973) (allowing intervention post judgment for purposes of appeal); State ex rel. Shevin v. Kerwin, 279 So.2d 836, 837 (Fla. 1973) (same); Wags Transp. Sys., Inc. v. City of Miami Beach, 88 So.2d 751, 752 (Fla. 1956) (holding that nonparties may intervene in order to appeal after judgment has been entered where justice so requires); Lieberman v. Lieberman, 43 So.2d 460, 463 (Fla. 1949) ("[T]he Chancellor permitted Mona Lieberman to intervene evidently for the primary purpose of giving her an opportunity to be heard in that court . . . and the privilege of appeal."); Reopelle v. Reopelle, 587 So.2d 508, 509 (Fla. 5th DCA 1991); Allen v. Sch. Bd. of Broward County, 522 So.2d 1036, 1037 (Fla. 4th DCA 1988); City of Hialeah Gardens v. Dade County, 348 So.2d 1174, 1180 (Fla. 3d DCA 1977); Herold v. Hunt, 327 So.2d 240, 241 (Fla. 4th DCA 1976); Hardy v. O'Grady, 159 So.2d 908, 910-11 (Fla. 3d DCA 1964).[10] *1174 In any event, since class members are bound by decisions affecting the class, intervention as a named party is an obvious, sanctioned and sensible way for the appellants, nonnamed members of a mandatory class, to protect their interests, including the asserted right to opt out altogether.
Citizens argues against allowing the Litvak group to intervene for the purpose of opposing the certification of a mandatory class, on grounds intervenors must take a lawsuit as they find it, subordinating their claims to those of the main parties. See, e.g., Krouse v. Palmer, 131 Fla. 444, 179 So. 762, 763 (1938) ("The law is settled that an intervener is bound by the record made at the time he intervenes and must take the suit as he finds it."); Nat'l Wildlife Fed'n Inc. v. Glisson, 531 So.2d 996, 998 (Fla. 1st DCA 1988) ("An intervenor must accept the record and pleadings as he finds them and cannot raise new issues, although he may argue the issues as they apply to him as a party."). The venerable rule that an intervenor must take the case as he finds it can be traced at least as far back as section 9 of the 1931 Chancery Act. See Ch. 14658, § 9, at 52, Laws of Fla. (1931) (creating the predecessor to Fla. R. Civ. P. 1.230). See also Krouse, 179 So. at 763. It prevents a stranger coming late to litigation from reshaping the case to the stranger's purposes, causing other litigants unjustified expense and delay, instead of initiating his own lawsuit.
But here it is the Litvak group's own lawsuit. Despite their vigorous protests, they are inextricably caught up in litigation meant to decide their rights under their insurance policies. They sought to intervene as named parties, in order to be heard on questions affecting them, understandably afraid that they would not have a forum elsewhere. See generally Devlin v. Scardelletti, 536 U.S. 1, 9-11, 122 S.Ct. 2005, 153 L.Ed.2d 27 (2002). Taking the lawsuit as they found itor as it found themthey asked only to be heard before their rights were adjudicated.[11]
*1175 "The provision for class suits is not a rule of law to be blindly followed without regard to the companion principle of law that no one can be bound by a judgment affecting his property without his day in court." City of Lakeland v. Chase Nat'l Co., 159 Fla. 783, 32 So.2d 833, 838 (1947). See also Port Royal, Inc. v. Conboy, 154 So.2d 734, 738 (Fla. 2d DCA 1963). This is one reason why the intervention rule requires intervenors to take cases as they find them only if not "otherwise ordered by the court in its discretion." Fla. R. Civ. P. 1.230 (2006). We have, moreover, approved an intervenor's challenge to class certification even where the intervenor was not a class member. See Smith v. Atl. Boat Builder Co., 356 So.2d 359, 362 (Fla. 1st DCA 1978). Denying a nonnamed class member the right to intervene to object to his inclusion in a mandatory class denies him "his day in court," while putting him at risk of a binding, adverse adjudication. Because the judge's denial of the motion to intervene effectively denied the Litvak group even the opportunity to oppose certification as a mandatory class, the judge abused his discretion in denying their motion to intervene as named parties.

IV.
The Litvak group never participated as named parties in the trial court because the trial court never granted their motion to intervene. For that reason, appellees argue, even if the Litvak group have standing[12] to appeal denial of their motion to intervene as named parties, the Litvak group lack standing to appeal the order certifying the class. We reject this argument. When nonnamed class members have sought relief in the trial court that an appealable order denies, "it now is clear that formal intervention no longer is necessary to lodge an appeal." 7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1799, at 256 (3d ed. 2005).
The Litvak group were parties to the proceedings below, unable to opt out and so bound by the class certification order they now seek to appeal. They made every reasonable effort to oppose the trial court's certification of a mandatory class and are therefore proper parties to appeal the class certification order, even though their motion to intervene as named parties was denied. See Ramos, 714 So.2d at 1148 ("The fact that the trial court denied the motions to intervene does not bar this appeal."). The objections they expressed and sought to raise in the trial court availed them naught there, but they laid the necessary predicate for appellate review of the certification order.
In their motion to intervene, the Litvak group alleged that they were members of the class the trial court certified; that Citizens had asked for stays, citing the class action, in other pending lawsuits members of the Litvak group had brought; and that Citizens conceded that most members of the Litvak group were class members, a fact that does not seem to be *1176 in dispute. The trial court denied the motion without taking evidence.
The motion to intervene served two overlapping functions in the present case. It perfected the Litvak group's application to participate below as named parties, which eventuated in the final, appealable order denying intervention. Because it also apprised the trial courtby the only means availablethat a group of nonnamed class members objected to certification of a mandatory class, it now allows them to appeal the non-final class certification order, as well. This is the teaching of Devlin,[13] albeit by analogy. See 536 U.S. at 7-8, 122 S.Ct. 2005. "Just as [federal] class action procedure allows nonnamed class members to object . . . at the fairness hearing without first intervening, . . . it should similarly allow them to appeal the District Court's decision to disregard their objections." Id. at 14, 122 S.Ct. 2005.
While Devlin involved a mandatory settlement class, the rationale is fully applicable in the present case. The Litvak group, although afforded no formal notice, and without any specific procedural prescription for making their position known to the trial court, nevertheless made their position clear and obtained a ruling in the trial court. They filed their motion to intervene and secured a ruling,[14] then appealed the denial of the motion to intervene,[15] along with the certification order. What was said in Devlin applies equally here:
What is most important to this case is that nonnamed class members are parties to the proceedings in the sense of being bound by the settlement. It is this feature of class action litigation that requires that class members be allowed *1177 to appeal the approval of a settlement when they have objected at the fairness hearing. To hold otherwise would deprive nonnamed class members of the power to preserve their own interests in a settlement that will ultimately bind them, despite their expressed objections before the trial court. Particularly in light of the fact that petitioner had no ability to opt out of the settlement, appealing the approval of the settlement is petitioner's only means of protecting himself from being bound by a disposition of his rights he finds unacceptable and that a reviewing court might find legally inadequate.
Id. at 10-11, 122 S.Ct. 2005 (citation omitted). Before the United States Supreme Court decided Devlin, the Third District held that due process required consideration on the merits of a nonnamed class member's appeal of a judgment approving a settlement, where the nonnamed class member had filed timely objection to the settlement, his motion to intervene as a named party had been denied, and he appealed both the judgment approving the settlement and the order denying intervention. See Ramos, 714 So.2d at 1148. The Ramos court explicitly rejected the argument that denial of the motion to intervene precluded appeal of the judgment. See id.
In short, there is little, if anything, to recommend Citizens' argument that, even if intervention should have been allowedand it should have beenthe order certifying the class ought to remain unassailable. The Litvak group did everything it could to make its position known to the trial court. See generally City of San Benito v. Rio Grande Valley Gas Co., 109 S.W.3d 750, 756 (Tex. 2003) ("The gas companies further argue that class actions will become unmanageable and unproductive if each member can individually appeal a judgment without first intervening in the action. We are not persuaded. To preserve a complaint for appellate review, a party must complain in the trial court."). We also agree with what was said in Ramos:
Where objectors seek intervention in order to appeal and intervention is denied, the appropriate procedure is to appeal both the final judgment and the order denying intervention. If on appeal it is shown that the trial court erred by denying intervention, the appellate court will then consider the merits of the challenge to the settlement.
Ramos, 714 So.2d at 1148 (citation omitted). The Litvak group took all these steps in the present case, and are therefore entitled to review of the order certifying a mandatory class. Despite their efforts, however, the trial court did not have the benefit of their full participation in deciding, first, whether a class action is appropriate and, if so, in formulating a class certification order. Rather than undertaking the task ourselves in the first instance, we vacate the certification order and remand the case for further proceedings, so the Litvak group can be heard if and when the matter is revisited.
The appeal in No. 1D05-2163 was taken from the non-final order granting class certification, not from a final judgment. In Florida,[16] the right to appeal an order *1178 granting certification of a class is no less certain than the right to appeal a final judgment. Like Texas law, Florida law differs from federal law on this point. Florida Rule of Appellate Procedure 9.130 allows an appeal as of right from any order certifying a class. See Fla. R.App. P. 9.130(a)(3)(C)(vi) (conferring jurisdiction to hear appeals involving non-final orders which determine "that a class should be certified").
The same situation obtains in Texas, where a Texas court has opined, with regard to appeals of class certification orders by nonnamed parties:
The Texas Civil Practice and Remedies Code grants a litigant the absolute right to an interlocutory appeal of a trial court's ruling "that . . . certifies or refuses to certify a class in a suit brought under TEX. R. CIV. P. 42." The Texas Supreme Court has held that the right to an interlocutory appeal under this rule extends to any order that "alter[s] the fundamental nature of the class." We know of no Texas case that limits this right to only named class representatives. . . . Presumably, the reason a class should be certified "as soon as practicable" is so that the unnamed class members may be notified as soon as possible that their rights may be impacted by the lawsuit. Once a class action has been certified, an unnamed class member may intervene in the class action or may challenge the certification decision itself by interlocutory appeal. See TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(3). Delaying the certification decision until the final judgment would effectively cut off that right to interlocutory appeal. The intervention requirement is predominately a device fashioned by federal courts, and the federal rules do not have a statute comparable to the one in Texas that allows for interlocutory appeal of a certification ruling. Imposition of the federal intervention requirement in settlement class cases seems at odds with Texas' policy of granting appeal of right of class certification decisions.
Northrup v. Sw. Bell Tel. Co., 72 S.W.3d 1, 11-12 (Tex.App. 2001) (footnote, quoted sources, and citations omitted).

V.
We reverse the order denying the motion to intervene, vacate the order certifying the class, and remand for further proceedings. On remand, any party seeking certification of a class will have the burden to show that class certification is proper under Rule 1.220(a) and Rule 1.220(b). See Fla. R. Civ. P. 1.220(b) (2006). To the extent allegations pertinent to class certification are disputed, the trial court will have "to ascertain whether the facts actually support the allegations." KPMG Peat Marwick LLP v. Barner, 799 So.2d 308, 309 (Fla. 2d DCA 2001). See also Barton-Malow *1179 Co. v. Bauer, 627 So.2d 1233, 1235 (Fla. 2d DCA 1993).
PADOVANO and LEWIS, JJ., concur.
NOTES
[1] The legal question asserted concerns what effect, if any, the Valued Policy Law (VPL) has in cases in which wind and water combined to render property Citizens insured against windstorm a total loss. We have not decided this precise question. In a case involving a private insurer, where water and wind combined to cause a total loss, we recently held that the "plain language in the 2004 version of the statute makes the insurer liable, if at all, then in the full amount for which the property was insured." Fla. Farm Bureau Cas. Ins. Co. v. Cox, 943 So.2d 823, 827 (Fla. 1st DCA 2006). We also noted:

"With specific reference to the VPL, the Florida Supreme Court has held that `any provisions of the policy under consideration in conflict with the [valued policy law] statute are devitalized by it.' Martin v. Sun Ins. Office of London, 83 Fla. 325, 91 So. 363, 365 (1922)." Id. at 833 (alterations in original). But, because Citizens is not a private insurer, statutes other than the VPL must also be taken into account in construing its policies. See, e.g., § 627.351(6)(q), Fla. Stat. (2004). Citizens was created and is governed by statute. See Ch. 2002-240, § 2, at 1768-69, Laws of Fla.
[2] The Litvak group listed ten reasons for opposing the order certifying the class, viz.: 1) the judge did not perform a rigorous analysis, which is required by the rules of civil procedure; 2) the class did not meet the certification criteria under Florida Rules of Civil Procedure 1.220(b)(1) and (b)(2); 3) the class violated due process rights of the class members because the order did not provide for notification of the class; 4) the common issues of law did not predominate over the individual fact issues; 5) the representatives' claims were not typical of all class members' claims; 6) the representative class members' attorneys could not provide fair and adequate representation of all members of the class, particularly for subclass "a"; 7) venue in Leon County was inconvenient for most class members and would not allow for adequate representation of class members; 8) a mandatory class action would prejudice class members with individual claims; 9) the subclasses were not based on any rational distinctions; and 10) one of the three subclasses would not be represented, as there were only two class representatives.
[3] Citizens and Scylla and Clark filed a joint motion to dismiss the appeal (of the non-final order certifying the class) in No. 1D05-2163, arguing that appellants had no standing to appeal because they had not been granted the right to intervene below. The Litvak group responded to the motion by arguing that intervention was not required for nonnamed members of a class to appeal orders affecting the class, citing Devlin v. Scardelletti, 536 U.S. 1, 122 S.Ct. 2005, 153 L.Ed.2d 27 (2002). We deny the motion to dismiss by separate order.
[4] Because the hearing had been set before the notice of appeal had been filed, and because the motion to relinquish was pending here, the trial judge listened to arguments so he would be in a position to rule, if the motion to relinquish jurisdiction was granted, without requiring the parties to make another appearance.
[5] While these appeals were pending, the trial court proceeded to the merits of the action below. On June 16, 2005, the judge entered a non-final order on the motions for summary judgment, granting Scylla and Clark's motion and denying Citizens' motion for summary judgment. Partial Final Judgment was entered on June 30, 2005, in favor of Scylla and Clark in the amount of the policy limits in each case. Summary Final Judgment was also entered regarding the class and each subclass. The court entered summary final judgment on the "Class Claim for Declaratory Relief" in favor of the insured plaintiffs. The court declared:

[T]he valued policy law requires Citizens to pay policy limits, less deductibles, to the Class members where Citizens-insured structures were damaged in the 2004 hurricanes by a combination of wind and flood in an amount giving rise to an actual or constructive total loss. Under the reasoning in Mierzwa, which this Court adopts, so long as Citizens had any liability for wind damage, its liability is in the amount of its policy limits.
This Court further DECLARES that Citizens is not entitled to a setoff of any amounts paid by a flood carrier for damage to insured properties.
The court also created two further subclasses: 1) the final judgment subclass (those class members as to whom Citizens acknowledges no basis for disputing coverage); and 2) the non-final judgment subclass (class members as to whom Citizens disputed coverage, had not yet determined if it disputed coverage, or could raise affirmative defenses against the policyholder's right to receive payment). The court found that each member of the final judgment subclass was entitled to judgment as a matter of law and ordered final judgments for each member in the amount of the member's policy limit. The court explained that partial final judgments were being entered for Scylla and Clark, and that judgment would be entered on behalf of the remaining class members as the members were identified. Citizens has appealed this judgment in No. 1D05-3480.
[6] The amended complaint alleged that prosecution of some ten thousand separate claims in various jurisdictions would be necessary and would create problems for many insured parties and might result in inconsistent and varying adjudications for insured individuals and Citizens alike, potentially causing "incompatible and inconsistent rulings and degrees of liability for [Citizens]." But see generally Seven Hills, Inc. v. Bentley, 848 So.2d 345, 353-54 (Fla. 1st DCA 2003) (noting that "the mere possibility of varying or inconsistent adjudications in which a party may prevail against a putative class member in one case and lose in a second case to another such class member, does not, standing alone, impose incompatible standards of conduct on the party" opposing the class) (internal quotation marks and citation omitted).
[7] This court explained in Seven Hills, Inc., that a court certifying a class under Rules 1.220(a) and 1.220(b) must determine whether class members should be given the opportunity to opt out. 848 So.2d at 355-56. "If a class is certified under rules 1.220(b)(1) or (b)(2), the right to opt out is based upon whether `a showing is made that the notice [insofar as it advises of the right to opt out] is not required.'" Id. at 355 (quoting Fla. R. Civ. P. 1.220(d)(1)) (alterations in original). The Seven Hills, Inc. court held that mandatory class certification across the board was improper in that case:

Although the trial court properly certified the settlement class for purposes of injunctive and declaratory relief under rule 1.220(b)(2), the record is devoid of the necessary rule 1.220(d)(1) showing as to why class members were not permitted to opt out of such a class. The trial court relied solely on the certification standard under rule 1.220(b)(1)(A) to support its determination that a mandatory class was necessary. Because this standard was inapplicable in the instant case, the trial court abused its discretion in creating a mandatory class.
Id. at 356. In the class certification order under review here, the trial court made no mention of any showing why the class should be mandatory. In fact, the trial court made no findings regarding the certification of the class under Rules 1.220(b)(1) and (b)(2). Thus, on remand, if the trial court again certifies a mandatory class under Rule 1.220(b)(1) or (b)(2), the trial court must include findings regarding whether a showing has been made that notice of the right to opt out is not required. See Fla. R. Civ. P. 1.220(d)(1) (2006); Seven Hills, Inc., 848 So.2d at 355-56.
[8] Specifically, the court found that there were hundreds, and perhaps more than a thousand, members of the proposed class and that joinder was impractical. The court found that class action was a superior vehicle to all other methods of fair and efficient adjudication of the controversy. The court also found that the prosecution of separate claims "would substantially impair or impede the ability of each class member to protect their interests" because there would be potentially thousands of cases throughout the state, which could result in review by various appellate courts of the state. The court found that "[b]y bringing a class action, the issues [would] be addressed once and resolved once." The court also found that because of the great number of plaintiffs spread among different jurisdictions, individual prosecution of claims "creates or may create a risk of inconsistent or varying adjudications concerning individual members of the class that would or may establish incompatible and inconsistent rulings and degrees of liability for Citizens." The court thus found that the requirement of numerosity was met.

The court next addressed commonality, identifying as common issues of law whether the VPL required payment of policy limits and whether Citizens was entitled to a set off for other insurance payments to plaintiffs. The court found that while there may be separate issues of fact, these issues of law were common to each claim. The court also divided the class into the three subclasses requested by Citizens, including subclass "a": plaintiffs whose windstorm damage was less than their deductibles.
The court next addressed typicality and explained that the definition of the proposed class was limited to those persons with claims substantially identical to Scylla's and Clark's: "a claim for payment of policy limits under the Citizens wind policy because of an actual or constructive total loss of the insured property as a result of a combination of wind and flood damage." Thus, the court found that the typicality requirement was met.
Finally, the court addressed fair and adequate representation. The court found that the class representatives would fairly and adequately represent the class because the class representatives had a common interest with the class and no conflict of interest with any member of the class. The court explained that the class representatives had the same financial interest and that counsel was experienced and, in fact, included the attorney for the plaintiffs in Mierzwa v. Florida Windstorm Underwriting Association, 877 So.2d 774 (Fla. 4th DCA 2004). The court thus found that the requirement of fair and adequate representation was met.
[9] A motion to intervene must identify an interest at stake that the would-be intervenor has standing to assert. At stake in the present case is the right to insurance proceeds the Litvak group claim as owners of insured property. "First, the trial court must determine that the interest asserted is appropriate to support intervention. Once the trial court determines that the requisite interest exists, it must exercise its sound discretion to determine whether to permit intervention." Union Cent., 593 So.2d at 507 (citation omitted).

This language has been definitively construed to require more than merely asserting a putative right. See Union Cent. Life Ins. Co. v. Carlisle, 593 So.2d 505, 507 (Fla.1992); Morgareidge v. Howey, 75 Fla. 234, 78 So. 14, 15 (1918). . . . The question whether the asserted interest supports intervention can itself usefully be subdivided into two parts.
Y.H., 784 So.2d at 568. "The asserted interest must . . . already be at issue in the proceeding, . . . be of a kind the would-be intervenor is a proper party to raise [and be] . . . such that the would-be intervenor `will either gain or lose by the direct legal operation . . . of the judgment.'" Id. at 568-69 (quoting Morgareidge, 78 So. at 15).
[10] We do not agree that "[i]ntervention in a lawsuit after final judgment, essentially for purposes of taking part in an appeal, is rarely permitted," Schiller v. Schiller, 625 So.2d 856, 860 (Fla. 5th DCA 1993), although our supreme court did say in Wags Transportation System, Inc. v. City of Miami Beach, 88 So.2d 751, 752 (Fla. 1956): "We are conscious of the general rule that it is too late to apply for intervention after final decree has been entered, though `there are cases where in the interest of justice leave to intervene has been granted after final decree.'" Id. (quoting People's Bank of Jacksonville v. Va. Bridge & Iron Co., 94 Fla. 474, 113 So. 680, 682 (1927)). Significantly, neither Schiller nor Wags, nor the cases Wags cites, were class actions.
[11] Before Devlin was decided, the Seventh Circuit ruled that nonnamed class members could not appeal a judgment in favor of certain defendants, saying their choices, if they were dissatisfied with the representation, were to opt outa choice unavailable to appellants hereor to intervene in federal district court. See In re Brand Name Prescription Drugs Antitrust Litig., 115 F.3d 456, 458 (7th Cir. 1997) (stating that any "adjustment"allowing intervention or opting out was the responsibility of the trial court so that "the structure of the action remains clear"). Even then, however, federal appeals courts also required that federal district courts freely allow intervention of nonnamed class members who objected to proposed settlements and wanted to appeal an adverse decision. See, e.g., In re Synthroid Mktg. Litig., 264 F.3d 712, 715 (7th Cir. 2001); Crawford v. Equifax Payment Servs., Inc., 201 F.3d 877, 880-81 (7th Cir. 2000) (abuse of discretion to deny intervention on ground that the motions were not filed until twenty-three days after the class was certified). Even when intervention is not sought until after settlement is proposed, "`[l]eave to intervene should be freely granted for purposes of appeal provided that the objector is a class member and objected . . . in the trial court.'" Barnhill v. In re Fla. Microsoft Anti-Trust Litig., 905 So.2d 195, 199 (Fla. 3d DCA 2005) (quoting Ramos v. Philip Morris Cos., 714 So.2d 1146, 1148 (Fla. 3d DCA 1998)).
[12] The United States Supreme Court explained that the traditional requirements of standinginjury, causation, and redressabilitywere clearly satisfied by a member of a class bound by a judgment. See Devlin v. Scardelletti, 536 U.S. 1, 7, 122 S.Ct. 2005, 153 L.Ed.2d 27 (2002). "What is at issue, instead, is whether petitioner should be considered a `party' for the purposes of appealing. . . ." Id. We disagree with the premise of appellees' argument. Whether the Litvak group are entitled to appeal the order certifying the class depends upon whether nonnamed class members are "parties" for the purpose of initiating an appeal, not on whether the would-be appellants are "named parties." See id. at 7-8, 122 S.Ct. 2005.
[13] The Court decided in Devlin that a nonnamed member of a mandatory class could appeal approval of the settlement the named parties reached, even though the nonnamed class member had not intervened in the case, but had instead merely objected to the settlement at a "fairness hearing." 536 U.S. at 8-9, 122 S.Ct. 2005. Federal Rule of Civil Procedure 23 provides an opportunity for class members to object to a settlement agreement. See Fed.R.Civ.P. 23(e)(4)(a) (2006). The analogous Florida rule requires that notice be given if the action will be dismissed or a compromise entered, but does not specifically address a class member's right to object. See Fla. R. Civ. P. 1.220(e) (2006).

The Court held the nonnamed class member was a party for purposes of appealing an order by which he was bound, explaining that, in overruling the nonnamed class member's objection, "[t]he District Court's approval of the settlementwhich binds petitioner as a member of the classamounted to a `final decision of [petitioner's] right or claim' sufficient to trigger his right to appeal." Id. at 9, 122 S.Ct. 2005 (quoting Williams v. Morgan, 111 U.S. 684, 699, 4 S.Ct. 638, 28 L.Ed. 559 (1884)). The Court rejected the argument that the nonnamed class member had to intervene in the trial court to appeal, where the nonnamed class member had taken all prescribed procedural steps for making his position known to the trial court.
[14] The court in Barnhill, 905 So.2d at 197-99, which involved class members who had the ability to opt out of the action altogether, nevertheless looked to Devlin, which was decided under the Federal Rules of Civil Procedure and involved a mandatory settlement class. Because the class members in Barnhill had the ability to opt out, the Third District decided that "there [wa]s no reason to allow them to appeal without intervening. Since the [objectors] did not move to intervene below, they are precluded from appealing the lower court's approval of the settlement." Id. at 199.
[15] The present case can be distinguished from a case in which dissenting class members seek to intervene as named parties but do not appeal the denial of their motion to intervene. See Concerned Class Members v. Sailfish Point, Inc., 704 So.2d 200, 201 (Fla. 4th DCA 1998) (granting motion to dismiss on basis that "[t]he Concerned Class Members did not pursue their motion to intervene any further, nor did they appeal the trial court's denial of that motion").
[16] In contrast, Federal Rule of Civil Procedure 23(f) (2005) reads: "A court of appeals may in its discretion permit an appeal from an order of a district court granting or denying class action certification under this rule if application is made to it within ten days after entry of the order." Federal cases often turn on whether an order certifying class is appealable at all, a question Florida Rule of Appellate Procedure 9.130(a)(3)(C)(vi) answers in the affirmative in every case. See generally, e.g., Hevesi v. Citigroup Inc., 366 F.3d 70, 76 (2d Cir. 2004) (explaining that there is a two-part test under Federal Rule of Civil Procedure 23(f) to determine whether to grant leave to appeal a certification of a class). In P.A.C.E. v. Sch. Dist. of Kansas City, 312 F.3d 341, 342 (8th Cir. 2002), nonnamed class members who had not moved to intervene appealed an order denying their motion to decertify the class. The class members argued that they did not need to intervene, citing Devlin. See id. at 342-43. The court explained that Federal Rule of Procedure 23(f) permitted appellate courts to review an order regarding certification of the class. See id. at 343. But the class members had not argued that Rule 23(f) applied. The court held that the class members did not give it any basis for jurisdiction of the appeal, but stated in passing that Devlin was "not on point because it involved a final order approving settlement of the case." Id. For reasons stated above, we find Devlin persuasive, even if not "on point."