IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

JOSEPH R. BIDEN, III, THE ATTORNEY GENERAL OF THE STATE OF DELAWARE,

NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING AND DISPOSITION THEREOF IF FILED

Appellant,

v.

CASE NO. 1D13-5053

JOHN S. LORD, HERBERT H. PEYTON, JOHN F. PORTER, III, WILLIAM T. THOMPSON, III, WINFRED L. THORNTON, WACHOVIA BANK, N.A., AS TRUSTEES UNDER THE LAST WILL AND TESTAMENT AND CODICILS THERETO OF ALFRED I. DUPONT, DECEASED, HARRY L. SHORSTEIN, STATE ATTORNEY IN AND FOR THE FOURTH JUDICIAL CIRCUIT OF THE STATE OF FLORIDA, AND THE NEMOURS FOUNDATION, A NOT-FOR-PROFIT CORPORATION ORGANIZED UNDER THE LAWS OF FLORIDA,

Appellees.

_____/

Opinion filed September 16, 2014.

An appeal from the Circuit Court for Duval County.
Waddell A. Wallace, Judge.

John B. Macdonald, Katherine E. Giddings, and Kristen M. Fiore of Akerman LLP, Tallahassee, for Appellant.

Blaine H. Winship, Special Counsel, Tallahassee; Daniel K. Bean, Edward F. Koren, Ben Z. Williamson, and Jennifer L. Kifer of Holland & Knight, Jacksonville; Sarah Butters of Holland & Knight, Tallahassee; R. Eric Bilik, Emily Y. Rottmann, and Rory J. Diamond of McGuire Woods, LLP, Jacksonville, for Appellees.

## CORRECTED OPINION

ROWE, J.

We deny Appellant's motion for rehearing and request for the certification of a question of great public importance. We grant Appellant's motion for a corrected opinion, withdraw our original opinion dated July 16, 2014, and substitute this corrected opinion.

Joseph R. Biden, III, as the Attorney General of Delaware, challenges the trial court's order denying his post-judgment motion to intervene in a case where final judgment was entered in 2004. Because he has failed to show that the trial court abused its discretion, we affirm.

### Factual Background

In 1935, Alfred I. duPont died as a resident and citizen of Duval County, Florida. Mr. duPont's will established a testamentary trust and required it to be administered under Florida law and subject to the jurisdiction of Florida courts.

2

The Trust provided for the creation of a charitable organization known as "The Nemours Foundation." The purpose of the foundation was for the care and treatment of "crippled children, but not incurables, or the care of old men or old women, and particularly old couples, first consideration, in each instance, being given to beneficiaries who are residents of Delaware. . . ." In 1971, the Trustees filed a lawsuit seeking judicial guidance in interpreting this purpose. The Delaware Attorney General was not a party to the litigation. The Duval County Circuit Court entered a judgment defining the term "crippled children" to include "persons under 21 years of age, who by reason of a physical defect or infirmity, whether congenital or acquired by accident, injury or disease, has been deprived of strength, activity or capability for service or use, in any part of the human body."

In 1977, multiple lawsuits involving the Trust were filed, including a lawsuit between the Trustees. This Court affirmed the circuit court's denial of the Delaware Attorney General's motion to intervene in that action. Del. ex rel. Gebelein v. Fla. First Nat'l Bank, 381 So. 2d 1075, 1078 (Fla. 1st DCA 1979). The Delaware Attorney General also filed his own lawsuit against the Trust. In 1980, the Trustees, Nemours, the Florida Attorney General, the Delaware Attorney General, and the Florida State Attorney for the Fourth Judicial Circuit entered into a stipulation to resolve all pending lawsuits. The stipulation named the Florida Attorney General as the representative of the "ultimate" charitable beneficiaries of

3

the Trust and named the Delaware Attorney General as the representative of the Delaware charitable beneficiaries. The parties acknowledged that the Trust was governed by Florida law, and the stipulation incorporated the definition of "crippled children" set forth in the 1971 judgment. Moreover, the Delaware Attorney General, the Florida Attorney General, and the Florida State Attorney for the Fourth Judicial Circuit were tasked with "closely observ[ing] the operations and activities of the Trust." The circuit court entered a final judgment adopting and incorporating the terms of the stipulations.

In 1984, Alfred duPont Dent, as a trustee, filed a lawsuit against the other trustees to increase the trustee fee. Dent lost the case; Delaware was not a party to this action. In 1993, the Trustees sought judicial modification of the Trust. Delaware had notice of this action and elected not to participate.

In 2004, the Trustees filed an action to modify the Trust, and the Florida State Attorney for the Fourth Judicial Circuit and Nemours were the named defendants. The result of this litigation was a 2004 final judgment that redefined "crippled children" as "persons under 18 years of age," although it provided that existing beneficiaries would not be affected by this change. The judgment expanded the Trust's purpose to include preventative care services for beneficiaries of the Trust. The judgment also required the Trustees to distribute three percent of the fair market value of the Trust every year, even if such distribution required

4

taking part of the principal. Delaware was not a party to this action, but the uncontroverted evidence demonstrates that the Delaware Attorney General was made aware of Nemours' planned expansion into preventative care services in 2004. The 2004 judgment resulted in more than $111 million in preventative care services being provided to the Delaware beneficiaries.

In 2012, the Delaware Attorney General filed a post-judgment motion to intervene as an indispensable party and to set aside the 2004 final judgment. The trial court denied the motion, finding that the original parties to the action would be injured by the intervention and that the interests of justice would not be served by intervention. The trial court also found that the Delaware Attorney General was not an indispensable party to the 2004 action. This timely appeal follows.

## Intervention

The sole issue before this Court is whether the trial court properly denied the motion to intervene. A trial court's denial of a motion to intervene will not be reversed absent a showing of an abuse of discretion. Litvak v. Scylla Props., LLC, 946 So. 2d 1165, 1172 (Fla. 1st DCA 2006).

After final judgment, intervention is not generally permitted. Dickinson v. Segal, 219 So. 2d 435, 436 (Fla. 1969); PS Capital, LLC v. Palm Springs Town Homes, LLC, 9 So. 3d 643, 645 (Fla. 3d DCA 2009) ("[I]ntervention after judgment . . . is extraordinary and disfavored."). However, a very narrow

5

exception to the general rule permits post-judgment intervention "when to do so would in no way injuriously affect the original litigants and when allowing intervention will further the interests of justice." Lewis v. Turlington, 499 So. 2d 905, 907-08 (Fla. 1st DCA 1986). Accordingly, in order for the Delaware Attorney General to be permitted to intervene in the 2004 action, the trial court was required to find (1) that intervention would not injuriously affect the original litigants and (2) that intervention would serve the interests of justice. The record does not support such findings, and the trial court did not err by denying the motion to intervene.

The Delaware Attorney General failed to demonstrate that post-judgment intervention would *in no way* injure the original litigants to the 2004 action. In Interest of M.L.M., 528 So. 2d 54, 56 (Fla. 1st DCA 1988) (holding that the exception allowing post-judgment intervention exists only "where intervention would in no way injuriously effect the original litigants. . . ."). If the Delaware Attorney General were permitted to intervene and set aside the 2004 judgment, the original litigants would be injured in several respects.[1] First, the preventative program that was put into place as a result of the 2004 judgment would no longer be authorized under the terms of the unmodified Trust. Second, vacating the 2004

---

[1] The Delaware Attorney General conceded this point by stating in the motion to intervene that the original parties "may be affected" by Delaware's intervention in the case.

6

judgment would radically alter the provision of care to trust beneficiaries because the preventative programs would cease to exist. Third, vacating the 2004 judgment would result in the invalidation of over $111 million in benefits distributed to Delaware residents. Because intervention by the Delaware Attorney General would injure the original litigants, the trial court properly denied the motion to intervene.

The Delaware Attorney General also failed to show that the interests of justice would be served by permitting intervention eight years after the entry of final judgment. See In re Adoption of a Minor Child, 593 So. 2d 185, 190 (Fla. 1991) (permitting post-judgment intervention in a case involving grandparents' interest in adopting their grandchild); Wags Transp. Sys. v. City of Miami Beach, 88 So. 2d 751, 752 (Fla. 1956) (permitting post-judgment intervention in a case involving the enforcement of zoning restrictions that would materially reduce the value of the homeowners' property). Allowing such action would be contrary to Florida's policy favoring judgment finality. Lewis, 499 So. 2d at 907 (holding that the trial court abused its discretion in allowing a party to intervene seventeen months after entry of a final order). Further, the Delaware Attorney General has a separate action pending in the circuit court concerning the Trust. It would be more appropriate for the Delaware Attorney General to seek modification of the Trust in that proceeding rather than attempting to invalidate a judgment that has been final

for eight years.

Additionally, Delaware had the responsibility to "closely observe the operations and activities of the Trust." The elapse of eight years between the entry of the 2004 judgment and Delaware's motion to intervene demonstrates that either Delaware had knowledge of, but no objection to, the 2004 judgment or that Delaware neglected its responsibility under the 1980 stipulation. Most importantly, the Delaware Attorney General failed to show that his intervention was necessary to protect the interests of Delaware's beneficiaries with regard to the 2004 judgment. Not only did the judgment expand benefits to Delaware beneficiaries to include over $111 million in preventative care services, but the interests of the Delaware beneficiaries were adequately represented in the 2004 proceedings. As was his statutory duty under the Florida Charitable Trusts Statutes, the Florida State Attorney for the Fourth Judicial Circuit represented the interests of all of the trust beneficiaries in the 2004 action, including the Delaware beneficiaries. § 737.507, Fla. Stat. (2004). As such, the trial court did not abuse its discretion in finding the interests of justice exception did not extend to the circumstances here.

Accordingly, because intervention by the Delaware Attorney General would injure the original litigants to the 2004 action and the interests of justice would not be served by the intervention, the trial court did not abuse its discretion in denying

8

the motion to intervene.

## Indispensable party

Disregarding the two-prong test for intervention, the Delaware Attorney General and the dissent urge this Court to proceed immediately to a determination of whether Delaware was an indispensable party to the 2004 litigation. However, neither presents any legal authority that would permit intervention for indispensable parties that do not meet the two-prong test. Regardless, the trial court properly determined that the Delaware Attorney General was not an indispensable party to the 2004 action.

The Florida Supreme Court has defined an indispensable party as "one whose interest in the controversy makes it impossible to completely adjudicate the matter without affecting either that party's interest or the interests of another party in the action." Fla. Dep't of Revenue v. Cummings, 930 So. 2d 604, 607 (Fla. 2006). The previous actions modifying the Trust demonstrate that the Delaware Attorney General does not meet this definition. In 1993, Delaware was notified of proceedings to modify the Trust and chose not to intervene. The fact that the Delaware Attorney General does not now argue that the 1993 judgment is void demonstrates that it is not impossible to completely adjudicate a modification of the Trust without the presence of the Delaware Attorney General.

Further, Delaware's presence in the 2004 action was not necessary for the

9

matter to be completely adjudicated. Mr. duPont chose to have the Trust administered in Florida. In 2004, Florida law provided that the state attorney for the judicial circuit where a trust had its principal place of administration was the proper representative of a charitable trust's beneficiaries.[2] §§ 737.501(5), 737.506, 737.507, Fla. Stat. (2004). Here, the Florida State Attorney for the Fourth Judicial Circuit was a named party in the 2004 action. As such, the interests of the trust beneficiaries, including the Delaware beneficiaries, were represented in the 2004 action. A specific representation by the Delaware Attorney General was not required. [3]

---

[2] Florida's trust statutes also permits the Florida Attorney General to intervene on the behalf of charitable trust beneficiaries. However, the Florida Attorney General is not considered an indispensable party with regard to a trust administered under Florida law. § 736.0110(3) Fla. Stat. (2006) ("The Attorney General *may* assert the rights of a qualified beneficiary with respect to a charitable trust having its principal place of administration in this state.") (emphasis added). It would defy logic to confer indispensable party status on the Delaware Attorney General where the Florida Attorney General has no such standing under Florida law.

[3] The dissent also argues that the Delaware Attorney General was entitled to notice of the 2004 proceedings. This argument fails for several reasons. First, there is no requirement in Florida trust laws or in the language of the 1980 stipulation to notify the Delaware Attorney General about any attempts to modify the Trust. Under the 2004 statutes, the only parties required to be notified prior to an amendment to a charitable trust were the named charity and the state attorney for the judicial circuit where the trust had its principal place of administration. §§ 737.501(5), 737.506, Fla. Stat. (2004). Here, Nemours and the Florida State Attorney for the Fourth Judicial Circuit were notified of the action. Second, even though not legally required, a representative of Nemours met with the then-serving Delaware Attorney General in 2004 and informed her about the new goal of providing preventative programs to the Delaware beneficiaries. This was sufficient

10

Because the Delaware Attorney General was not an indispensable party to the 2004 action and the interests of the Delaware beneficiaries were represented by the Florida State Attorney for the Fourth Judicial Circuit, the trial court did not abuse its discretion when it denied the motion to intervene.

AFFIRMED.

MARSTILLER, J., CONCURS; SWANSON, J., DISSENTING WITH OPINION.

---

notice to trigger the Delaware Attorney General's duty under the 1980 stipulation to "closely observe the operations and activities of the Trust." However, the record is devoid of any evidence that Delaware failed to further investigate this change.

SWANSON, J., dissenting.

The trial court's refusal to allow the Delaware Attorney General to intervene as an indispensable party to this case involving this trust resulted in a fundamental denial of due process. It is undisputed the Delaware Attorney General was a party to the 1980 court-approved settlement agreement regarding the proper interpretation of the testamentary trust created by Alfred I. duPont, which established and funds a charitable corporation known as "The Nemours Foundation." Specifically, the agreement expressly recognized that first consideration is to be given to beneficiaries who are residents of Delaware and that the "Attorney General of the State of Delaware is the representative of the Delaware charitable beneficiaries of the Alfred I. duPont Testamentary Trust and of The Nemours Foundation, and as head of the Department of Justice of the State of Delaware is charged with protecting the rights of the said Delaware beneficiaries . . . ." It is also undisputed the Delaware Attorney General was never made a party in the subsequent action resulting in the 2004 judgment, which modified the trust and the 1980 agreement interpreting it by (1) reducing benefits to "crippled children" by three years by terminating them at age eighteen instead of age twenty-one; (2) requiring the trustees to invade the principal of the trust if necessary to ensure a three-percent distribution of the fair market value of the trust;

12

and (3) eliminating the requirement that the Nemours Board of Managers be comprised of a three-fifths majority of Delaware residents.

Clearly, these material modifications were made without the participation of the designated representative of the primary intended beneficiaries of the trust. Because the Delaware Attorney General was an indispensable party to this action as the Delaware beneficiaries' lawful representative, due process required that the Delaware Attorney General be given formal notice of the action. Failure to provide such notice would render the 2004 judgment void and subject to challenge at any time under Florida Rule of Civil Procedure 1.540(b)(4). See Space Coast Credit Union v. The First, F.A., 467 So. 2d 737, 739 (Fla. 5th DCA 1985) (holding that "[j]urisdiction is perfected by a proper service of sufficient process on all indispensable parties" and the trial court's failure to acquire jurisdiction over a party in the proper manner renders its judgment void and subject to attack at any time under rule 1.540(b)). Although the trustees asserted below that the Delaware Attorney General had actual notice of the action, this is disputed by the Delaware Attorney General. At a minimum, intervention and an evidentiary hearing are required to determine whether sufficient notice was provided and to resolve any other factual disputes regarding the validity of the 2004 judgment. Accordingly, I would reverse and remand with directions that the Delaware Attorney General be allowed to intervene for purposes of filing a rule 1.540(b)(4) motion to vacate the

13

2004 judgment as void. However, in light of the majority's decision to affirm, I have no choice but to respectfully dissent.